# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE WILDERNESS SOCIETY, *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>DONALD J. TRUMP, in his official )<br>capacity as President of the United States, )<br>*et al.*, )<br>)<br>Defendants. ) | Case No. 1:17-cv-02587 (TSC) |
| GRAND STAIRCASE ESCALANTE )<br>PARTNERS, *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>DONALD J. TRUMP, in his official )<br>capacity as President of the United States, )<br>*et al.*, )<br>)<br>Defendants. ) | Case No. 1:17-cv-02591 (TSC)<br><br>**CONSOLIDATED CASES** |

**FEDERAL DEFENDANTS' RESPONSE TO MOTION FOR STATUS CONFERENCE**

Plaintiffs move the Court to set a status conference to address two issues: (1) their allegation that Federal Defendants have violated their obligations under the Court's October 30, 2018 Notice Order, ECF No. 57; and (2) "the impending release of a series of new management plans for the diminished Grand Staircase [sic] Monument and excluded areas." Pls.' Mot. for Status Conference ("Motion") at 7, ECF No. 105. Federal Defendants stand ready and willing to discuss both issues with the Court at a status conference if the Court would find it useful. However, because Plaintiffs' allegations of a Notice Order violation are baseless, and because it

1

is unclear what guidance the Court can give with respect to the "new management plans," Federal Defendants question whether a status conference is necessary.

## BACKGROUND

On September 13, 2018, the Bureau of Land Management ("BLM") entered into a contract with Advance Resource Solutions, Inc. ("ARS") to prepare a travel route inventory for the Grand Staircase Escalante National Monument ("Monument") and Kanab–Escalante Planning Area ("KEPA"),[1] the latter of which comprises the lands excluded from the boundaries of the Monument by Proclamation 9682. *See* ECF No. 105-1 at 7. All of these lands are presently managed under the terms of BLM's Monument Management Plan ("MMP"), issued in 2000. Decl. Edwin Roberson, ¶¶ 7, 12, ECF No. 43-2. BLM is presently in the process of preparing new land use plans (called "resource management plans" or "RMPs") for the Monument and the KEPA, and the travel route inventory data will be used to inform travel plans that BLM will prepare after RMPs for these areas are adopted. *See* BLM E-planning Website.[2] Preparing such an inventory is a normal part of BLM's land use planning process, and it involves obtaining a "comprehensive baseline inventory of all transportation related routes, both motorized and non-motorized, that exist on the BLM-managed lands for a particular planning area." BLM Handbook, H 8342, at 9-10.[3]

The contract with ARS (hereinafter the "Inventory Contract") identified the "Period of Performance" as September 17, 2018 through September 16, 2019. ECF No. 105-1 at 8. It provided terms of the parties' agreement, but also attached (and incorporated) BLM's general

---

[1] The contract refers to this area as the Kanab-Escalante Resource Area. ECF No. 105-1 at 7.
[2] Available at https://eplanning.blm.gov/epl-front-office/eplanning/planAndProjectSite.do?methodName=dispatchToPatternPage&currentPageId=141295 (last visited Aug. 9, 2019).
[3] Available at www.blm.gov/policy/handbooks (last visited Aug. 9, 2019).

Blanket Purchase Agreement ("BPA") Travel Management for Route Inventory, Evaluation, and Planning.  *Id.*; Ex. 1.  The BPA provided additional terms and requirements for the work, including a Performance Work Statement containing detailed instructions and standards for the inventory process.  Ex. 1, Attachment 1 at 1-36.  Under its terms, ARS crews were to travel routes (including by motor vehicle) and collect Global Positioning System ("GPS") data and other information for them.  Ex. 1, Attachment 1 at 15.  The BPA also instructed that "reclaimed routes will not be driven so as to not cause resource damage or to encourage further use if they are in a reclaiming mode (as defined by the BLM)."  *Id.* at 17.

In December 2018, ARS suggested that BLM provide "some sort of authorization letter" for ARS's crews because such letter would make the crews "feel more secure knowing that if anyone should stop them and ask what they are doing, they can present them with the authorization letter."  Ex. 2 at 1.  To accommodate this concern, BLM prepared such a letter (hereinafter "the Authorization Letter"), which its officials signed on March 18, 2019.  The letter explained that BLM had issued a route inventory contract to ARS, and that:

> The bearer of this letter is employed by Advanced Resource Solutions, conducting business for the BLM under federal contract.  ARS employees are authorized motorized and non-motorized access to public lands managed by the BLM within the project area.

ECF No. 105-1 at 2.  To BLM's knowledge, ARS crews carried a copy of the Authorization Letter when undertaking their on-the-ground work of collecting GPS data and other information for the routes in the Monument and the KEPA (the "Inventory work").

On July 9, 2019, Plaintiffs emailed Federal Defendants' counsel, noting that they had learned that the BLM "may have recently authorized third-party contractors to drive motorized vehicles on certain 'closed routes' inside the [Monument]."  Ex. 3 at 4.  Federal Defendants counsel responded with emails dated July 12, July 16, and July 23.  *Id.* at 1-4.  In these emails,

x

Federal Defendants' counsel explained their position as to why the Notice Order was not implicated, and provided Plaintiffs' counsel with copies of the contract and BPA, and emails between BLM and ARS.  Federal Defendants also explained that the terms of the BPA prevented motor vehicle travel on "reclaimed roads."  *Id.* at 1.  Finally, Federal Defendants explained that the Inventory work is "essentially complete, and while there's a chance that an additional route or routes could be inventoried in the future, there are no plans to do that currently."  *Id.*  BLM has since confirmed that no additional on-the-ground Inventory work is planned under the Inventory Contract.

In the meantime, BLM's planning process for the RMPs for the Monument and KEPA continues.  The next step will be for BLM to issue proposed RMPs (the availability of which BLM will notice through the Federal Register).  *See* BLM E-Planning Website.  The Federal Register notice will initiate a 30-day protest period and a concurrent 60-day Governor's consistency review, after which BLM may issue signed records of decision ("RODs") approving the RMPs.  *Id.*  BLM presently intends to conclude this process and issue RODs during 2019.  *Id.*

## DISCUSSION

Federal Defendants are willing to discuss any issues related to this case with the Court, and therefore do not object to Plaintiffs' request for a status conference.  However, Federal Defendants believe that the two issues identified by Plaintiffs—namely, (1) their claim that Federal Defendants should have provided notice of the Inventory work under the Notice Order, and (2) their request for guidance from the Court addressing any future RMPs—may be adequately addressed without a status conference.

### A. Plaintiffs' Contentions Regarding the Notice Order

Plaintiffs assert that Federal Defendants violated the Notice Order by not providing notice of BLM's decision to authorize the Inventory work. They are wrong for two fundamental reasons.

First, as Plaintiffs state, under the Notice Order, BLM must provide Plaintiffs with notice two days prior of any "effective date" of "its decision to authorize a use of a road or trail by a third party or BLM that was not permitted as of December 4, 2017." Notice Order, ECF No. 57, ¶ 2.e. But no notice was required for the Inventory work, because it was permitted under both the pre-existing MMP—which continues to govern the lands at issue—and BLM's pre-existing regulations addressing vehicle use on BLM-managed public lands.

The purpose of the Notice Order was to provide Plaintiffs with notice of new activities that would *not* have been permitted on the lands prior to their being excluded from the Monument by Proclamation 9682. Thus, the Notice Order requires Federal Defendants to provide notice of road use "that was not permitted as of December 4, 2017"—the date Proclamation 9682 issued. *See id.*

Here, the Inventory work was permitted under BLM's regulations and the still-in-force 2000 MMP—just as it would have been had Proclamation 9682 never issued.[4] BLM's regulations at 43 C.F.R Part 8340, which govern the use of off-road vehicle use on BLM-

---

[4] As Federal Defendants have noted in prior filings, until new RMPs are adopted the MMP continues to govern both land within the Monument and the lands excluded from the Monument (i.e., the KEPA lands). *See* Mem. Supp. Mot. Dismiss, ECF No. 43-1 at 19, 23-24; ECF No. 43-2 ¶ 12. Thus, in deciding to issue the Inventory Contract, BLM was required to comply with the MMP—just as it would have had Proclamation 9682 never issued. Underscoring this point, the Inventory work is not just on lands excluded from the Monument—but also on lands that remain *within the Monument*.

administered public lands,[5] allow travel for "official use" on lands that are otherwise closed to vehicle use. Specifically, vehicle travel is generally prohibited "on those areas and trails closed to off-road vehicle use." *See* 43 C.F.R. § 8341.1(c). But the regulations expressly exclude from this prohibition "[v]ehicles in official use," namely, "use by an employee, agent, or designated representative of the Federal Government or *one of its contractors*, in the course of his employment, agency, or representation." 43 C.F.R § 8340.0-5(a)(4) & (d) (emphasis added). *See also* 44 Fed. Reg. 34,834, 34,834 (June 15, 1979) (federal register notice for promulgation of 43 C.F.R. Part 8340, noting that "emergency or normal administrative activities requiring the use of off-road vehicles are also covered by the exclusion" from the definition of the term "off-road vehicle"). Here, any vehicle use by ARS under the Inventory Contract was indisputably "official use."

Nothing in the MMP contradicts BLM's off-road vehicle regulations; to the contrary, the MMP expressly recognizes the governance of the 43 C.F.R. Part 8340 regulations. MMP at 46 (excerpts of the MMP are attached as Ex. 4). Plaintiffs' assertion that the MMP overrode BLM's regulations and expressly prohibited BLM or BLM-contractor vehicle use except on designated routes is neither logical nor supported by the Plan itself.

Plaintiffs, however, imply that the administrative routes designated in the MMP are the only routes on which "official use" could occur, and thereby contend that official use of routes that were not designated in the MMP was not allowed as of December 4, 2017. *See* Motion at 2, 4. But Plaintiffs misconstrue the MMP. Under the MMP, where BLM determined that it "or

---

[5] Under the regulations, "off road vehicles" are generally defined as "any motorized vehicle capable of, or designed for, travel on or immediately over land, water, or other natural terrain," subject to certain exclusions. 43 C.F.R. § 8340.0-5(a). These regulations generally govern the use of any motorized vehicle, even if the vehicle (for instance, like a passenger sedan) does not match the stereotypical characteristics of an "off road vehicle."

some other permitted user must have access for *regular* maintenance or operation," it designated "administrative routes" given this need for *regular* use.  MMP at 47-48 (emphasis added).  This designation did not somehow repeal BLM's existing authority to use vehicles for "official use" on lands within the Monument that were not designated for administrative use.  Indeed, other portions of the MMP demonstrate that administrative or other irregular use of non-designated roads could occur under its terms.  *See id.* at 36 (noting exceptions for emergency and management may "allow off-highway vehicle use, aircraft landing, motorized or mechanized access on closed routes, or use of mechanized equipment in closed areas"), 48 (noting use of non-designated routes for range monitoring and study areas).  Thus, Plaintiffs' claim that that the Inventory work is not permitted under the MMP is simply wrong.  And contrary to their Motion, they never would have had any grounds to seek "emergency relief" from the Court preventing it from occurring.[6]

There is a second, and equally fundamental reason why Federal Defendants were not required to provide Plaintiffs with notice of the Inventory work.  The Notice Order could not apply here because the final decision authorizing the Inventory work was made *before* the Notice Order issued, and therefore could not have given rise to any notification obligation related to the Inventory work.  BLM executed the Inventory Contract on September 13, 2018, and the "Period of Performance" (and therefore the latest possible "effective date") commenced on September 17, 2018.  ECF No. 105-1 at 8.  The Notice Order was not in force on either of these dates, and it

---

[6] Plaintiffs assert that "BLM's route inventory has already caused damage to the Monument." ECF No. 105 at 3.  But they provide no evidence whatsoever for this assertion, and ignore the fact that under the Inventory contract, vehicle travel would not be authorized on reclaimed routes.  *See* Ex. 1, Attachment 1 at 17.  Further, while Plaintiffs specifically point to "illegal OHV tracks on closed routes by the Paria River," ECF No. 105 at 5, according to BLM, ARS did no on-the-ground Inventory work on routes along the Paria River.

provides no requirements for providing notice of decisions that had already occurred. *See* ECF No. 57.

Plaintiffs, recognizing this defect in their argument, try to characterize the Authorization Letter as the relevant decision. But in doing so, they misconstrue the nature of the letter. It was not, in any sense, a decision document. Rather, it was simply a document that BLM provided ARS, at ARS's request, for its employees to carry to show that that their activity was authorized. *See* Ex. 2. And the letter itself noted that the authorization for the ARS employees' activity was the Inventory Contract. *See* ECF No. 105-1 at 2-3 (providing that "the bearer of this letter is employed by Advanced Resource Solutions, conducting business for the BLM *under federal contract*").

That the Authorization Letter was not itself a decision is corroborated by the fact that neither the terms of the Inventory Contract nor the BPA contemplated any additional authorization. *See* Ex. 1, Attachment 1 at 9-10, 15-16 (describing inventory process and BLM's obligations related thereto). And no additional authorization was needed. As noted above, BLM's regulations authorize travel for "official use" on lands that are otherwise closed to vehicle use, and any vehicle use by ARS under the Inventory Contract was indisputably "official use."

Under these circumstances, Plaintiffs' assertion that BLM has violated the Notice Order has no basis whatsoever. The same is true for their requests for various forms of relief. As such, Federal Defendants do not believe that a status conference is necessary to address this issue. But we are more than willing to appear before the Court to address these issues should the Court believe it would be helpful.

### B. Plaintiffs' request for guidance related to "New Management Plans"

Plaintiffs' request to discuss "new management plans" is, if anything, an even more dubious basis for a status conference. *See* Motion at 7.

As noted above, BLM is in the process of preparing RMPs for both the Monument and the KEPA (which includes the lands that were excluded from the Monument under Proclamation 9682). Draft proposed RMPs have already been issued and circulated for public comment, and the next step will be for BLM to issue its final proposed RMPs. *See* BLM E-planning Website. After that, BLM will make the decision whether to adopt the proposed RMPs in RODs. But BLM will need to wait at least 60 days after the issuance of the final proposed plans before doing so to comply with regulatory timing requirements. *Id. See also* 43 C.F.R. §§ 1610.5-2 & 1610.3-2(e).

Plaintiffs assert that they may seek to challenge the new RMPs, and "thus seek this Court's guidance for the procedural process that would be most compatible with the Court's docket." ECF No. 105 at 7. But it is completely unclear what guidance Plaintiffs wish the Court to provide. If Plaintiffs wish to challenge the RMPs, they are free to do so—if and when they become final agency action. But they should not be asking the Court for advice as to how they should proceed with any such challenge.

Accordingly, Federal Defendants do not see the need for a status conference to address this issue. But if the Court sees it differently, Federal Defendants remain ready and willing to appear before the Court and answer any questions it might have.

Respectfully submitted this 13th day of August, 2019,

                            LAWRENCE VANDYKE
                            Deputy Assistant Attorney General

                            */s/ Romney S. Philpott*

Romney S. Philpott
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
999 18th St., #370
Denver, CO 80202
Phone:  303-844-1810
Fax:  303-844-1350
E-mail:  Romney.Philpott@usdoj.gov


Attorneys for Federal Defendants

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of August, 2019, I filed the above pleading with the Court's CM/ECF system, which provided notice of this filing by e-mail to all counsel of record.

>                             */s/ Romney S. Philpott*
>                             Romney S. Philpott