**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| THE WILDERNESS SOCIETY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cv-02587 (TSC) |
| | ) | |
| JOSEPH R. BIDEN, in his official capacity as President of the United States,  *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| GRAND STAIRCASE ESCALANTE PARTNERS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 1:17-cv-02591 (TSC) |
| v. | ) | |
| | ) | |
| JOSEPH R. BIDEN, in his official capacity as President of the United States,  *et al.*, | ) | |
| | ) | **CONSOLIDATED CASES** |
| Defendants. | ) | |
| | ) | |

**FEDERAL DEFENDANTS' RESPONSE IN OPPOSITION TO INTERVENOR-DEFENDANT STATE OF UTAH'S MOTION TO REOPEN CASES AND LIFT STAY IN ORDER TO FILE MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

    A.    Proceedings in this Consolidated Action ................................................. 3

    B.    Challenges to the Biden Proclamation ................................................... 5

    C.    Utah's Motion to Reopen ........................................................................ 7

ARGUMENT ...................................................................................................................... 8

    I.    The Appropriate Standard of Review ..................................................... 8

    II.    The Stay Factors Weigh in Favor of Maintaining the Stay ................................. 10

        A.    The Effect of Completion of Utah litigation on these Proceedings .......... 11

        B.    The Balance of Hardships Weighs in Favor of Continuing the Stay ........ 13

            i.    Utah will not be harmed by maintaining the existing stay ............ 14

            ii.    Lifting the stay will harm the other parties and maintaining it will promote judicial efficiency ................................................... 16

CONCLUSION .................................................................................................................. 17

## TABLE OF AUTHORITIES

**Cases**

*Ala. Ass'n of Realtors v. U. S. Dep't of Health & Hum. Servs.*,
  557 F. Supp. 3d 1 (D.D.C. 2021) ............................................................... 10

*\*Allen v. District of Columbia*,
  No. 20-cv-02453-TSC, 2024 WL 379811 (D.D.C. Feb. 1, 2024) ................................ 9, 11, 13

*Belize Soc. Dev. Ltd. v. Gov't of Belize*,
  668 F.3d 724 (D.C. Cir. 2012) ............................................................... 8, 10

*Bridgeport Hosp. v. Sebelius*,
  No. 09-cv-1344, 2011 WL 862250 (D.D.C. Mar. 10, 2011) .................................... 13

*Campaign Legal Ctr. v. Correct the Rec.*,
  No. 23-cv-0075-JEB, 2023 WL 2838131 (D.D.C. Apr. 7, 2023) ........................ 8, 9, 11, 13

*Clinton v. Jones*,
  520 U.S. 681 (1997) ....................................................................... 8

*Garfield County v. Biden*,
  No. 22-cv-0059, 2023 WL 5180375 (D. Utah Aug. 11, 2023) ................................ 6

*Hisler v. Gallaudet Univ.*,
  344 F. Supp. 2d 29 (D.D.C. 2004) .......................................................... 9

*\*Hulley Enters. Ltd. v. Russian Fed'n*,
  211 F. Supp. 3d 269 (D.D.C. 2016) ..................................................... 9, 15

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) .................................................................... 8, 11

*Leyva v. Certified Grocers of Cal., Ltd.*,
  593 F.2d 857 (9th Cir. 1979) ............................................................. 9

*Marsh v. Johnson*,
  263 F. Supp. 2d 49 (D.D.C. 2003) ....................................................... 8, 11

*Nat'l Indus. for Blind v. Dep't of Veterans*,
  *Affs.*, 296 F. Supp. 3d 131 (D.D.C. 2017) ................................................ 9

*Nken v. Holder*,
  556 U.S. 418 (2009) ..................................................................... 10

*Novenergia II - Energy & Env't (SCA) v. Kingdom of Spain*,
  No. 18-cv-01148-TSC, 2020 WL 417794 (D.D.C. Jan. 27, 2020) ............................ 15

*Pub. Citizen v. U.S. Dist. Court for the D.C.*,
  486 F.3d 1342 (D.C. Cir. 2007) .......................................................... 15

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
   549 U.S. 422 (2007) ................................................................................. 15

*United States ex rel. Vt. Nat'l Tel. Co. v. Northstar Wireless, LLC*,
   288 F. Supp. 3d 28 (D.D.C. 2017) ......................................................... 9

**Statutes**

54 U.S.C. § 320301(b) ................................................................................. 6

**Rules**

Fed. R. Civ. P. 41(a)(1)(A)(ii) .................................................................. 15

Fed. R. Civ. P. 41(a)(2) .............................................................................. 15

**Other Authorities**

61 Fed. Reg. 50,223 (Sept. 18, 1996) .................................................... 1, 2

82 Fed. Reg. 58,089 (Dec. 4, 2017) .......................................................... 2

86 Fed. Reg. 57,335 (Oct. 8, 2021) ...................................................... 1, 2, 5

86 Fed. Reg. 7037 (Jan. 20, 2021) ......................................................... 3, 4

Defendants Joseph R. Biden, in his official capacity as President of the United States, Debra A. Haaland, in her official capacity as Secretary of the Interior, and Tracy Stone-Manning, in her official capacity as Director of the Bureau of Land Management (together "Federal Defendants"), hereby respond to Intervenor-Defendant State of Utah's ("Utah") Motion to Reopen Cases and Lift Stay in Order to File Motion to Dismiss ("Motion to Reopen"), ECF No. 202.  The motion should be denied.

## INTRODUCTION

These consolidated cases involve various plaintiffs' challenges to Presidential Proclamation 9682 (the "Trump Proclamation"), which, in 2017, modified the boundaries of the Grand Staircase-Escalante National Monument ("GSENM" or "Monument"), previously established by President Clinton in Proclamation 6920, 61 Fed. Reg. 50,223 (Sept. 18, 1996). The boundary modification made by the Trump Proclamation reduced the total acreage reserved as part of the Monument.  On October 8, 2021, President Biden issued Proclamation 10286 (hereinafter the "Biden Proclamation"), which reinstates the Monument reservation and management that existed prior to issuance of the Trump Proclamation.  Specifically, the Biden Proclamation, "[r]estor[es] the Grand Staircase-Escalante National Monument to its size and boundaries as they existed prior to December 4, 2017."  86 Fed. Reg. 57,335, 57,336 (Oct. 8, 2021).  Following issuance of the Biden Proclamation, this Court entered a stay of the proceedings in this case.  Mar. 8, 2021 Order 2, ECF No. 152.

Utah, joined by Intervenor-Defendants the American Farm Bureau Federation and Utah Farm Bureau Federation (the "Farm Bureaus"), as well as Garfield County and Kane County (the "Counties"), moves to lift the stay in this action so that it can file a motion to dismiss Plaintiffs' challenges to the Trump Proclamation as moot.  Utah contends that the Biden Proclamation, by

"essentially return[ing] the GSENM boundaries to pre-December 4, 2017 status[,] . . . has given plaintiffs the remedy they were seeking, thus making the cases classically moot."  Motion to Reopen at 4.  But Utah is taking conflicting positions in two separate cases regarding the Monument.  In its separate challenge to the Biden Proclamation, which is currently pending on appeal in the Tenth Circuit Court of Appeals, Utah contends that the Biden Proclamation is invalid—and consequently that any boundary modification effectuated by the Biden Proclamations is void and without legal effect.  Yet, in its Motion to Reopen in this case, Utah argues that the boundary modifications contained in the Biden Proclamation *do* have legal effect and thus remedy Plaintiffs' injuries.  Utah's conflicting positions thus confirm there is a disputed legal issue—the validity of the Biden Proclamation boundary modification—that should be resolved before this Court addresses Utah's mootness argument.  In these circumstances, Federal Defendants respectfully submit that Utah's Motion to Reopen is premature, and that maintaining the existing stay pending resolution of Utah's challenge to the Biden Proclamation would best serve the interests of the Court and the parties in the efficient administration of justice.

## BACKGROUND

The Grand Staircase-Escalante National Monument (the "Monument") was established and its boundaries initially designated by President Clinton in 1996.  *See* Proclamation 6920 (the "Clinton Proclamation"), 61 Fed. Reg. 50,223 (Sept. 18, 1996).  President Clinton reserved approximately 1.7 million acres of federal land managed by the Bureau of Land Management ("BLM").  *Id.* at 50,225.  Congress subsequently made minor boundary adjustments in 1998 and 2009.  *See* Proclamation 10286*,* 86 Fed. Reg. at 57,344.  On December 4, 2017, President Trump issued a proclamation modifying the boundaries of the Monument, reducing its size to

approximately 861,974 acres.  *See* Proclamation 9682, 82 Fed. Reg. 58,089, 58,093 (Dec. 4, 2017).

### A.  Proceedings in this Consolidated Action

Shortly after the Trump Proclamation issued, two sets of plaintiffs, namely The Wilderness Society *et al*. ("TWS") and Grand Staircase Escalante Partners *et al*. (the "GSEP UDB"), brought separate suits challenging the Trump Proclamation.  The two cases were consolidated into this action (or "Action").  In their Amended Complaints, the Plaintiffs assert claims that the Trump Proclamation (1) exceeded the scope of the President's delegated authority under the Antiquities Act and therefore was *ultra vires*; (2) violated the constitutional separation of powers; (3) violated several statutes that Plaintiffs assert enlarged and/or codified the Monument's boundaries; and (4) violated the Antiquities Act because it was based on improper considerations.  *See* TWS Am. Compl., ¶¶ 199-225, ECF No. 119; GSEP Am. Compl., at 67-72, ECF No. 120.  Plaintiffs also argue that Federal Defendants' implementation of the Trump Proclamation would be unlawful and should be enjoined under the Administrative Procedure Act.  Plaintiffs seek a declaratory judgment that the Proclamation is invalid and an injunction barring its implementation.  *See* TWS Am. Compl., at 58, ECF No. 119; GSEP Am. Compl., at 72-73, ECF No. 120.

On January 11, 2019, the Court granted the motions of Utah, the Counties, and the Farm Bureaus to intervene as defendants.  ECF No. 83.  In 2020, this Action progressed to briefing on cross-motions for partial summary judgment, and the final brief (Utah's Reply in Support of Federal Defendants' Cross-Motion for Partial Summary Judgment, ECF No. 148) was filed on June 6, 2020.  While the cross-motions were pending, there was a change in presidential administration, and on January 20, 2021, President Biden issued Executive Order 13990 (hereinafter "E.O. 13990"), entitled "Protecting Public Health and the Environment and

Restoring Science to Tackle the Climate Crisis," 86 Fed. Reg. 7,037 (Jan. 20, 2021). Section 3(a) of E.O. 13990 instructed the Secretary of the Interior to, in consultation with other cabinet members and with Tribal governments, conduct a review of "the monument boundaries and conditions that were established by . . . Proclamation 9682 . . . to determine whether restoration of the monument boundaries and conditions that existed as of January 20, 2017, would be appropriate." *Id*. at 7,039. In Section 3(b), it further instructed the Secretary to submit a report to the President within 60 days summarizing the findings of the review—and making recommendations for "such Presidential actions or other actions consistent with law as the Secretary may consider appropriate to carry out the policy" set forth in the Executive Order. *Id*.

After Federal Defendants notified the Court of the Executive Order, ECF No. 150, the Court issued a minute order requiring the parties to meet and confer, and file a joint status report advising the Court:

> 1) whether the current dispute has been mooted or the parties anticipate that it will be mooted;
>
> 2) whether the parties wish to stay this action for any reason, including the parties' negotiations over resolving this dispute; or
>
> 3) whether the parties agree that this litigation should continue as anticipated pursuant to the federal rules, local rules or a scheduling order.

Feb. 2, 2021 Minute Order. On March 5, 2021, Federal Defendants filed an unopposed motion to stay the proceedings for a 90-day period, and to extend the parties' deadline to respond to the Court's questions to the end of that period. ECF No. 151. The Court granted the Motion and stayed the case until further order of the Court, but further required the parties to file status reports every 30 days going forward. ECF No. 152, at 2.[1] The Court subsequently, by minute

---

[1] The Court also denied the pending cross-motions for summary judgment without prejudice to the parties refiling the motions. ECF No. 152, at 1.

order dated September 30, 2021, directed the clerk to administratively close the case.  In that minute order, the Court also instructed that "[t]he parties shall continue to file status reports in the lead case as required by this [court's July 1, 2021] Minute Order," and further, that the parties "may file a motion to return this case to the court's active docket as appropriate."  Sept. 30, 2021 Minute Order.

### B.  Challenges to the Biden Proclamation

On October 8, 2021, President Biden issued the Biden Proclamation, reinstating the monument boundaries and protections that existed prior to issuance of the Trump Proclamation. The Biden Proclamation did not, however, purport to withdraw or rescind the Trump Proclamation, but rather provided that "[t]o the extent any provision of [the Trump Proclamation] is inconsistent with [the Clinton Proclamation], the terms of this proclamation and [the Clinton Proclamation] shall govern."  86 Fed. Reg. at 57,345.

On August 24, 2022, Utah, joined by the Counties (together, the "Utah Plaintiffs"), filed suit in the United States District Court for the District of Utah challenging the Biden Proclamation (as well as President Biden's Proclamation 10285, addressing the Bears Ears National Monument).  *See Garfield County v. Biden* ("*Garfield County*"), No. 22-cv-0059 (D. Utah Aug. 8, 2023).  One day later, on August 25, 2022, a similar lawsuit was filed by three individuals (Zebediah Dalton, Kyle Kimmerle, and Suzette Morris) and an organization, the BlueRibbon Coalition (collectively, the "Dalton Plaintiffs").  *See Dalton v. Biden*, No. 22-cv-0060 (D. Utah Nov. 11, 2022).  The two cases were consolidated into District of Utah Case No. 22-cv-0059.

In their Amended Complaint, the Utah Plaintiffs asserted two claims as to GSENM:

(1) The Biden Proclamation exceeded the scope of the President's delegated authority under the Antiquities Act because it designated ineligible objects as monuments and

5

reserved more land than is necessary to care for the eligible objects, and therefore was *ultra vires* and unlawful (Am. Compl. ¶¶ 378-83, *Garfield County,* No. 22-cv-0059, ECF No. 91); and

(2) The BLM violated the Administrative Procedure Act by issuing a purported "interim management plan" for the Monument under the Biden Proclamation. *Id.* ¶¶ 393-99.

In their Prayer for Relief, the Utah Plaintiffs asked the Court to, among other things:

(1) Declare that the Biden Proclamation "is unlawful, *ultra vires*, contrary to law, and exceeds the President's authority under the Antiquities Act in part or in full;"

(2) Declare that any agency action taken pursuant to the Biden Proclamation is contrary to law and in excess of the agency's statutory authority; and

(3) Issue injunctive relief restraining the implementation or enforcement of the Biden Proclamation and the December 2021 management plan implementing it.

*Id.* (Prayer for Relief ¶¶ 1-3).

On August 11, 2023, the Utah District Court dismissed the two cases with prejudice for failure to state a claim. *Garfield County v. Biden*, No. 22-cv-0059, 2023 WL 5180375 (D. Utah Aug. 11, 2023). The court held that both the Utah Plaintiffs and Dalton Plaintiffs' claims challenging the Proclamations failed as a matter of law because the plaintiffs had not identified a waiver of the United States' sovereign immunity for the claims. *Id.* at *7-*8.[2]

The Utah Plaintiffs and the Dalton Plaintiffs both appealed the Utah District Court's decision to the United States Court of Appeals for the Tenth Circuit, No. 23-4106 (10th Cir. Aug. 15, 2023) and No. 23-4107 (10th Cir. Aug. 16, 2023), and the appeals were consolidated in *Garfield County v. Biden*, No. 23-4106. The Utah Plaintiffs are asking the Tenth Circuit to "reverse the district court's Rule 12(b)(6) dismissal in full, and remand so that this case may

---

[2] The Utah District Court did not address the United States' alternative arguments that Utah failed to state a claim in its cause of action asserting that the Biden Proclamation violated the Antiquities Act by (1) designating improper items as protectable "objects," and (2) by not complying with the Act's instruction that a monument reservation be "confined to the smallest area compatible with the proper care and management of the objects to be protected." Opening Br. of Pls.-Apps. at 4-5 (emphasis omitted) (quoting 54 U.S.C. § 320301(b)), *Garfield County v. Biden*, No. 23-4106 (10th Cir. Oct. 30, 2023). On appeal, Utah has argued that the Tenth Circuit should also address the viability of these causes of action under Rule 12(b)(6). *See* Reply Br. of Pls.-Apps. at 4-6, *Garfield County*, No. 23-4106 (10th Cir. Feb. 9, 2024).

proceed to summary judgment."  Reply Br. of Pls.-Appellants at 4, *Garfield County*, No. 23-4106 (10th Cir. Feb. 9, 2024).  The appeals have been fully briefed, and oral argument is scheduled to occur in September 2024.  Mar. 14, 2024 Order, *Garfield County*, No. 23-4106.[3]

### C.  Utah's Motion to Reopen

From 2021 through January 2024, the parties filed joint status reports in this Action every thirty days, as required by the Court.  Starting in April 2022, Utah and the Counties (joined later by the Farm Bureaus) included a statement in the reports that they believed that continued delay in resolving the case was inappropriate, because "the Plaintiffs and the Federal Defendants have not provided information justifying any contention that the case is not now moot."  *See, e.g.*, Joint Status Report at 2, ECF No. 164; Joint Status Report at 3, ECF No. 187.

On January 24, 2024, after reviewing the parties' January 2024 status report, the Court issued a minute order requiring the parties to (1) meet and confer by March 25, 2024, and (2) file a joint status report by April 24, 2024, "apprising the Court on the status of ongoing resolution discussions and any additional issues, particularly those of the opposing entities (i.e., State of Utah, Garfield County, Kane County, the American Farm Bureau Federation, and the Utah Farm Bureau Federation)."  Jan. 24, 2024 Minute Order.  After meeting and conferring, the parties filed their joint status report on April 24, 2024, informing the Court that Utah would be moving to lift the stay in this case.  Joint Status Report 3, ECF No. 199.

On May 16, 2024, Utah filed its Motion to Reopen, which the Counties and the Farm Bureaus joined.  ECF No. 202.  Utah attached to its motion a proposed motion to dismiss these

---

[3] For ease of reference, this Response will refer hereafter to the Utah Plaintiffs' litigation in the District of Utah, and the subsequent appeal to the Tenth Circuit, as the "Utah litigation."

cases as moot.  Motion to Reopen, Ex. A, ECF No. 202-1.  Utah has indicated that it intends to file the motion to dismiss if the Court lifts the stay and reopens this case.

ARGUMENT

Federal Defendants respectfully request that the Court maintain the existing stay pending resolution of the pending challenges to the Biden Proclamation.  Under the applicable standard of review, interests in judicial efficiency strongly weigh in favor of maintaining the stay, and doing so will result in no harm to Utah, the Counties or the Farm Bureaus.

## I.   The Appropriate Standard of Review

A district court has "broad discretion" in deciding whether to stay proceedings.  *Clinton v. Jones*, 520 U.S. 681, 706 (1997).  The power to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co*., 299 U.S. 248, 254-55 (1936).  A stay may be lifted in light of changed circumstances, and in determining whether to lift a stay, the Court retains the same "inherent power and discretion" it exercised to impose the stay.  *Campaign Legal Ctr. v. Correct the Rec*., No. 23-cv-0075-JEB, 2023 WL 2838131, at *3 (D.D.C. Apr. 7, 2023) (quoting *Marsh v. Johnson*, 263 F. Supp. 2d 49, 52 (D.D.C. 2003)).  *See also Marsh*, 263 F. Supp. 2d at 52 ("Logically, the same court that imposes a stay of litigation has the inherent power and discretion to lift the stay.").

When determining whether to stay proceedings (or, it follows, to maintain an existing stay), courts should "'weigh competing interests and maintain an even balance[]' between the court's interests in judicial economy and any possible hardship to the parties."  *See Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732–33 (D.C. Cir. 2012) (quoting *Landis*, 299 U.S. at 254–55).  Consistent with these considerations, a "stay may be warranted where resolution of [a]

separate proceeding 'will likely narrow the issues in the pending cases and assist in the determination of the questions of law involved.'" *Allen v. District of Columbia*, No. 20-cv-02453-TSC, 2024 WL 379811, at *2 (D.D.C. Feb. 1, 2024) (quoting *Hulley Enters. Ltd. v. Russian Fed'n*, 211 F. Supp. 3d 269, 276 (D.D.C. 2016)).  *See also Hisler v. Gallaudet Univ.*, 344 F. Supp. 2d 29, 35 (D.D.C. 2004) ("[A] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." (quoting *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979)).  Such a "stay is justifiable even where the 'parallel proceedings "may not settle every question of fact and law," but would settle some outstanding issues and simplify others.'" *Allen*, 2024 WL 379811, at *2 (citations omitted).

In *Allen*, this Court evaluated the following factors when considering whether to stay a matter pending completion of other proceedings: (1) the effect, if any, the completion of the other proceedings will have on the proceedings before the Court; and (2) the balance of hardships between the parties.  *See Allen*, 2024 WL 379811, at *2-*5; *see also United States ex rel. Vt. Nat'l Tel. Co. v. Northstar Wireless, LLC*, 288 F. Supp. 3d 28, 31 (D.D.C. 2017) (similar).  With respect to the balance of hardships, the Court considered three subfactors: "(1) harm to the nonmoving party if a stay does issue; (2) the moving party's need for a stay—that is, the harm to the moving party if a stay does not issue; and (3) whether a stay would promote efficient use of the court's resources." *Allen*, 2024 WL 379811, at *2 (quoting *Campaign Legal Ctr.*, 2023 WL 2838131, at *2).  Ultimately, "hardship to the parties and benefits to judicial economy are the key interests to consider in evaluating a motion for a stay." *Nat'l Indus. for Blind v. Dep't of Veterans Affs.*, 296 F. Supp. 3d 131, 137 (D.D.C. 2017) (citing *Hulley*, 211 F. Supp. 3d at 276).

Utah argues that a different standard of review should apply, namely:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Motion to Reopen at 4 (quoting *Ala. Ass'n of Realtors v. U. S. Dep't of Health & Hum. Servs.*, 557 F. Supp. 3d 1, 7 (D.D.C. 2021) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009))).  But these factors relate to a different type of stay: a stay of a trial court's ruling or order pending appeal*.  See Ala. Ass'n*, 557 F. Supp. 3d at 3, 7-10 (addressing motion to lift stay of the Court's order vacating challenged government action pending appeal); *Nken*, 556 U.S. at 422 (addressing applicable law regarding "the granting of a stay by a court of appeals while it considers the legality of a removal order").  Utah has not identified any decision where a court applied the *Nken* factors to determine whether to stay proceedings still pending before the district court to allow for the resolution of other proceedings.  Indeed, the very first factor in this analysis— namely "whether the stay applicant has made a strong showing that he is likely to succeed on the merits"—serves no purpose when the Court is considering a stay that would serve only to pause court proceedings (as opposed to the scenarios in the cases cited by Utah, which involve a party seeking to lift a stay of a court order pending appeal of that order).

Accordingly, the proper factors for consideration of Utah's Motion to Reopen are those applied by this Court in *Allen*.  As demonstrated below, those factors weigh in favor of maintaining the stay.

## II.     The Stay Factors Weigh in Favor of Maintaining the Stay

Ultimately, the decision whether to maintain the stay of proceedings requires the Court to "'weigh competing interests and maintain an even balance[]' between the court's interests in judicial economy and any possible hardship to the parties." *Belize Soc. Dev. Ltd.*, 668 F.3d at

10

732–33 (quoting *Landis*, 299 U.S. at 254–55).  *See also Allen*, 2024 WL 379811, at *2-*5 (addressing (1) the effect the completion of the other proceedings will on the proceedings before the Court; and (2) the balance of hardships between the parties).  Here, Utah's sole reason for seeking to lift the stay is to allow it to file a motion to dismiss this Action as moot because, Utah asserts, the Biden Proclamation has alleviated any injury giving rise to Plaintiffs' claims.  Motion to Reopen at 3.  But Utah believes the Biden Proclamation is *ultra vires* and is simultaneously seeking to invalidate the Proclamation in the pending Utah litigation.  The completion of the Utah litigation thus may have a substantial effect on the arguments Utah wishes to assert in this Action, and accordingly, the interests of judicial efficiency weigh strongly in favor of maintaining the stay.  Conversely, Utah can point to no actual injury should the Court maintain the stay.

     A.  <u>The Effect of Completion of the Utah Litigation on These Proceedings</u>.

Applying the first factor in the *Allen* analysis, Utah's arguments in its Motion to Reopen demonstrate that the Utah litigation may have an important impact on the proceedings before this Court.  As Utah notes in its Motion to Reopen, a court may lift an existing stay "[w]hen circumstances have changed such that the court's reasons for imposing the stay no longer exist or are inappropriate."  *Marsh*, 263 F. Supp. 2d at 52; *Campaign Legal Ctr.*, 2023 WL 2838131, at *3.  Utah contends that there are changed circumstances here—namely that "the Biden Proclamation essentially returned the GSENM boundaries to Pre-December 4, 2017 status."

Motion to Reopen at 3-4.  Thus, Utah argues, the "Biden Proclamation has given plaintiffs the remedy they were seeking" and the cases are "classically moot."  *Id.* at 4.[4]

Utah's argument cannot be taken at face value because it disregards the fact that Utah has asked a different court to invalidate the Biden Proclamation and eliminate the very "changed circumstance" that it asserts make these cases moot.  In its separate challenge, Utah seeks relief (1) declaring the Biden Proclamation invalid; (2) declaring that any agency action taken pursuant to the Biden Proclamation is contrary to law and in excess of the agency's statutory authority; and (3) enjoining Federal Defendants "from implementing or enforcing [the Biden Proclamation]."  Am. Compl., Prayer for Relief ¶¶ 1-3, *Garfield County*, No. 22-cv-0059, ECF No. 91.  Because the mootness argument Utah wishes to press in this Action is flatly inconsistent with Utah's challenge to the validity and implementation of the Biden Proclamation, it would be manifestly reasonable to continue the stay to allow the Tenth Circuit and the District of Utah to first resolve Utah's arguments there.

In its Motion to Reopen, Utah never attempts to explain why a proclamation that it believes is *ultra vires* can redress Plaintiffs' alleged injuries and render their challenge to the Trump Proclamation moot.  Rather, Utah obfuscates the connection between the two cases by arguing that they encompass unrelated legal issues because they address different theories as to

---

[4] The centrality of this point to Utah's position is corroborated by its proposed motion to dismiss, attached to its Motion to Reopen, which asserts that:

> As a result of the Biden Proclamation, the Trump Proclamation no longer causes a redressable injury. Plaintiffs' injuries were allegedly caused by the Trump Proclamation's boundary reductions. But the Biden Proclamation has already returned those boundaries to how they existed before the Trump Proclamation. Without a redressable injury, Plaintiffs' claims are moot.

Motion to Reopen Ex. A at 2, ECF No. 202-1.

why the respective Proclamations are allegedly invalid.  Motion to Reopen at 6.  However, the difference in legal *theories* in the arguments in these cases does not change the fact that Utah's suit, if successful, could result in the invalidation of the boundary modification that is the centerpiece of Utah's mootness argument.  As this Court explained, "a stay is justifiable even where the 'parallel proceedings "may not settle every question of fact and law," but would settle some outstanding issues and simplify others.'"  *Allen*, 2024 WL 379811, at *2 (quoting *Bridgeport Hosp. v. Sebelius*, No. 09-cv-1344, 2011 WL 862250, at *1 (D.D.C. Mar. 10, 2011)).  Here, although they assert different theories, the plaintiffs in this Action—and the Utah Plaintiffs in the Utah litigation—are ultimately seeking a ruling that would answer the same question: the lawful boundaries of the Monument.  Moreover, as discussed above, Utah cannot legitimately contend that the outcome of the Utah litigation will not impact the proceedings in this Action, given that its proposed mootness argument relies completely upon the validity of the proclamation Utah is simultaneously challenging as invalid.  Under these circumstances, Utah cannot credibly assert that the completion of the Utah litigation will have no effect on these proceedings, *see Allen*, 2024 WL 379811, at *2, and a continued stay of these proceedings pending completion of the Utah litigation is warranted.

B.  <u>The Balance of Hardships Weighs in Favor of Continuing the Stay</u>.

In considering the balance of hardships, this Court evaluates three subfactors: "(1) harm to the nonmoving party if a stay does issue; (2) the moving party's need for a stay—that is, the harm to the moving party if a stay does not issue; and (3) whether a stay would promote efficient use of the court's resources."  *Id.* (quoting *Campaign Legal Ctr.*, 2023 WL 2838131, at *2).  The second and third factors here are dispositive.  In light of the complete absence of harm to Utah,

the Counties, or the Farm Bureaus, the interests of the Court and the parties in the efficient

administration of justice weigh strongly in favor of continuing the stay.

                  i.        Utah will not be harmed by maintaining the existing stay.

Utah, the Counties, and the Farm Bureaus are not harmed and will not be harmed by the

continuing stay of proceedings in this Action.  All of these parties are Intervenor-Defendants:

they do not seek any relief in this litigation, but instead are participating to defend the Trump

Proclamation.  Not surprisingly, therefore, Utah identifies no actual injury that might result from

suspending litigation on claims which seek to invalidate the Proclamation that Utah, the

Counties, and the Farm Bureaus intervened to support.

Instead, Utah argues generically that it, the Counties, and the Farm Bureaus "were

granted intervention in these cases because their interests and rights were at stake."  Motion to

Reopen at 5.  But Utah does not explain how a continued stay would impact such unspecified

"interests and rights" given that Utah seeks no affirmative relief in this lawsuit.  Indeed, Utah's

ultimate assertion that the Court should dismiss this litigation as moot further corroborates this

point.  Whether stayed or dismissed, the effect on Utah, the Counties, and the Farm Bureaus is

the same: Plaintiffs' claims would not be litigated and Intervenor-Defendants' "interests and

rights" implicated by the litigation of Plaintiffs' claims could not be prejudiced.

Utah also argues that it will be harmed because the other parties are seeking an "improper

'settlement' of moot claims."  *Id.  See also id.* at 5 n.4 (indicating that Utah "asserts that any

'settlement agreement' would be inappropriate given that the case is now moot").  But this

argument, like its others, is inherently paradoxical.  The claims are moot, Utah claims, because

of issuance of the Biden Proclamation—the same proclamation that Utah is simultaneously

seeking to invalidate in the Utah litigation.  Moreover, Utah does not explain why such a

settlement of the claims (whether moot or not) would be necessarily harmful to its interests.

Further any such harm would have to result from the substance of the agreement itself—not from

continuing the existing stay.  Finally, if a settlement agreement were to be reached during or after

the stay, any dismissal of this Action pursuant to the settlement would likely allow for input by

Intervenor-Defendants such as Utah, the Counties, and the Farm Bureaus.  Specifically, the case

could be dismissed either by (a) a stipulation of dismissal "signed by all parties who have

appeared"—which would necessarily include the Intervenor-Defendants; *see* Fed. R. Civ. P.

41(a)(1)(A)(ii); or (b) by a court order—which must be obtained via motion, thus granting Utah

the opportunity to oppose or to seek conditions protective of its interests.  *See* Fed. R. Civ. P.

41(a)(2) (providing that "an action may be dismissed at the plaintiff's request . . . by court order,

on terms that the court considers proper").  As such, Utah's assertion of possible harm is

baseless.

To the extent Utah is implying that a stay should not be entered (or in this case,

maintained) when there are questions regarding the Court's jurisdiction over the matter, such

concerns are misplaced.  As the D.C. Circuit has explained, "certain non-merits,

nonjurisdictional issues may be addressed preliminarily, because '[j]urisdiction is vital only if

the court proposes to issue a judgment on the merits.'"  *Pub. Citizen v. U.S. Dist. Court for the

D.C.*, 486 F.3d 1342, 1348 (D.C. Cir. 2007) (alteration in original).  Whether to stay a matter is

just such an issue that may be addressed prior to resolving jurisdictional questions.  *See

Novenergia II - Energy & Env't (SCA) v. Kingdom of Spain*, No. 18-cv-01148-TSC, 2020 WL

417794, at *2 (D.D.C. Jan. 27, 2020) ("Courts in this District have held that stays are a threshold,

non-merits issue which a court may consider before resolving jurisdictional issues."); *see also

Hulley,* 211 F. Supp. 3d at 279–80 (noting that "[t]he Supreme Court has expressly held that a

court may, for the sake of efficiency, decline to determine its subject matter jurisdiction prior to deciding a 'threshold, nonmerits issue' presented by a case," and staying proceedings despite defendant's objection to subject matter jurisdiction (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 433 (2007)).  And a stay is particularly appropriate here because Utah directly ties its assertion that jurisdiction is lacking to the same proclamation that it is challenging in a separate lawsuit.

Accordingly, Utah faces no harm from a continued stay pending resolution of its challenge to the Biden Proclamation.  Utah's true goal here appears to be to have this case dismissed as moot (based on the Biden Proclamation), so that if Utah *does* prevail in the Utah litigation and obtain an order vacating the Biden Proclamation, there would be no pending challenge to the Trump Proclamation (which has not been rescinded), and Plaintiffs could find themselves time-barred from refiling a new challenge to revive their claims.  Whatever the merits of this strategy, Utah does not (and cannot) claim that the denial of its attempt to prematurely assert a mootness argument is the type of harm that compels lifting the stay of this Action.

        ii.  Lifting the stay will harm the other parties and maintaining it will promote judicial efficiency.

In contrast to Utah's lack of harm from a continued stay, lifting the stay will harm the other parties because it would impair their ability to adequately address Utah's mootness arguments.  As the very first line of its Motion to Reopen makes clear, Utah's sole purpose for seeking a lift of the stay is so that it can file its motion to dismiss this Action as moot.  Motion to Reopen at 2.  But, as repeatedly addressed above, Utah's mootness argument relies entirely upon the existence of the Biden Proclamation—which Utah is simultaneously seeking to invalidate in the Utah litigation.  Without knowing what will become of the Biden Proclamation, the non-

16

moving parties could not effectively meet Utah's mootness arguments and would be prejudiced as a result.

The unresolved nature of Utah's challenge to the Biden Proclamation is also critically important with respect to judicial efficiency.  It would not serve judicial efficiency for the Court to address mootness where (1) the resolution of the Utah litigation in the Tenth Circuit is directly related to the central premise of Utah's mootness argument here; and (2) a victory by Utah in its challenge to the Biden Proclamation could obviate the need to address the question of mootness at all.[5]  The resolution of the Utah litigation will reduce the uncertainty regarding the validity of the current Monument boundaries.  Thus, even if further settlement negotiations between Plaintiffs and Federal Defendants fail and this Action returns to active litigation, there will exist a more settled basis for this Court to determine whether dismissal of Plaintiffs' claims for lack of jurisdiction is warranted.

## CONCLUSION

Utah's Motion to Reopen should be denied.  Utah's sole purpose for lifting the stay is to allow it to argue that Plaintiffs' claims have been mooted by the Biden Proclamation.  Yet in separate proceedings, Utah simultaneously seeks to invalidate the Biden Proclamation.  The interest of the Court, the parties, and the public in the efficient administration of justice is best

---

[5] Utah also argues that the public interest weighs in favor of lifting the stay because this Action has been pending for over six years, and "[t]ime and money are being expended on these moot claims."  Motion to Reopen at 5-6.  The public interest is not a factor expressly identified in the standard of review.  But, insofar as the public interest is relevant, Utah has not provided any reason why prematurely addressing the question of mootness would further the public interest, nor has Utah demonstrated that a continuing stay creates a burden on the public.  Moreover, Utah's assertion that "time and money" are being expended to any meaningful extent is simply not the case.  As Utah itself emphasizes, "except for Notices of Appearances and court-mandated JSRs[,] *nothing* substantive has been filed in these cases in the over three years they have been stayed."  *Id.* at 5.

served by continuing to hold this matter in abeyance until Utah's challenges to the boundary

modifications in the Biden Proclamation are conclusively resolved.

Respectfully submitted this 14th day of June, 2024,

TODD KIM
Assistant Attorney General

  /s/ Romney S. Philpott
Romney S. Philpott
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
999 18th St., #370
Denver, CO 80202
Phone:  303-844-1810
E-mail:  Romney.Philpott@usdoj.gov

Judith E. Coleman
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 7611
Benjamin Franklin Station
Washington, D.C. 20044
Phone: 202-514-3553
E-mail: Judith.Coleman@usdoj.gov

*Attorneys for Federal Defendants*

18