STEPHEN K. KAISER (Utah Bar No. 18146)
KATHY A. F. DAVIS (Utah Bar No. 4022)
ASSISTANT ATTORNEYS GENERAL
SEAN D. REYES (Utah Bar No. 7969)
UTAH ATTORNEY GENERAL
1594 W. North Temple Street, Suite 320
Salt Lake City, UT 84116
skkaiser@agutah.gov
kathydavis@agutah.gov

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE WILDERNESS SOCIETY, *et al.*, <br><br> Plaintiffs, <br> v. <br><br> JOSEPH R. BIDEN, in his official capacity as President of the United States, *et al.*, <br><br> Defendants. | Case No. 1:17-cv-2587 (TSC) |
| GRAND STAIRCASE ESCALANTE PARTNERS, *et al.*, <br><br> Plaintiffs, <br> v. <br><br> JOSEPH R. BIDEN, in his official capacity as President of the United States, *et al.*, <br><br> Defendants. | Case No. 1:17-cv-02591 (TSC) <br><br> **CONSOLIDATED CASES** |
| STATE OF UTAH <br><br> Intervenor-Defendant. | |

**INTERVENOR-DEFENDANT STATE OF UTAH'S REPLY IN SUPPORT OF ITS MOTION TO REOPEN CASES AND LIFT STAY IN ORDER TO FILE MOTION TO DISMISS**

1

**INTRODUCTION**

Intervenor-Defendant State of Utah ("State") respectfully submits this Reply in Support of its Motion to Reopen Cases and Lift Stay in the above captioned cases for the limited purpose of filing a Motion to Dismiss Due to Mootness. The State is joined in its reply by Intervenor-Defendants American Farm Bureau Federation, Utah Farm Bureau Federation, Kane County, Utah and Garfield County, Utah ("Joining Parties").

**ARGUMENT**

**I.  UTAH WOULD SUFFER HARM SHOULD THE STAY REMAIN IN PLACE.**

Plaintiffs and Federal Defendants argue the State would suffer no harm should the stay imposed in these cases remain in place. This argument is without merit and is belied by Plaintiffs' admission that the parties are seeking a settlement addressing mining claims without the input of the State or the individual claimholders. Additionally, Federal Defendants and Plaintiffs suffer no harm should the stay be lifted.

**a.  Utah would be harmed by a settlement agreement addressing mining claims.**

Both Plaintiffs and Federal Defendants argue that the State would not be harmed or injured should the stay remain in place. (ECF 206, p. 8); (ECF 207, p. 14). Initially, as the State has previously asserted, the State has been excluded from settlement discussions in these cases and will not be able to protect its rights should the parties settle. Further, as noted by this Court, "If Plaintiffs are successful on the merits, the State of Utah's ability to provide road access to the public and exploit the property at issue for revenue-generating purposes through multiple avenues may be impaired." (ECF 83, p. 6).

Now, following the Plaintiffs' opposition to the State's Motion to Lift the Stay, Utah's harms become even more apparent. According to Plaintiffs' opposition filing:

2

> There are multiple hardrock mining claims that were located in the Monument between February 2, 2018 (when the Trump Proclamation went into effect and lifted the mineral withdrawal), and October 8, 2021 (when the Biden Proclamation restored monument status and reimposed the mineral withdrawal). These mining claims were not expressly revoked by the Biden Proclamation, and because the mining claimants may conduct ground-disturbing activity within the boundaries of the Monument, these claims may harm Plaintiffs' asserted interest. In fact, Federal Defendants have received proposed plans of operations for ground disturbing activity for multiple claims. Federal Defendants have shared other proposed plans of operations with Plaintiffs (pursuant to the Court's notice order) that are not publicly available.

(ECF 206, p. 10) (internal citations omitted).

When discussing the mining claims, Plaintiffs indicate that "they may be able to reach an acceptable settlement around these claims with Federal Defendants (and were on their way to doing so, prior to the Utah litigation) absent the looming threat of the Biden Proclamation's invalidation." (ECF 206, p. 6). Interestingly, the Federal Defendants do not address the mining claims in their opposition to the State's Motion to Lift Stay. The attempt to "settle" these mining claims, which did not exist and were not pleaded in Plaintiffs' complaint at the time this lawsuit was filed, fortifies the State's harms.

The State is particularly concerned with the federal management of land within its borders, especially because the federal government claims ownership or management control of almost two-thirds of the land within Utah's borders.[1] Federal public lands provide necessary contributions, both direct and indirect, to State and local revenues. As an example, in 2013, federal public lands in Utah generated $331.7 million in revenues and, of that total, the State and its Counties received $149.8 million (or 45.2 percent).[2] In 2017, the State received $73.5 million

---

[1] Jan Elise Stambro, *Analysis of Transfer of Federal Lands to the State of Utah*, 74 Utah Econ. Bus. Review 1 (2014), https://d36oiwf74r1rap.cloudfront.net/wp-content/uploads/2015/09/uebr2014no3.pdf.
[2] *Id.* at 3.

3

from public land natural resource extraction alone.³ Along with revenue for the State and its Counties, local businesses and communities rely on multiple-use public land activities such as mining because of the ancillary business, jobs and revenue that those activities bring to the State's rural communities.

Any settlement canceling any mining claims referenced by Plaintiffs would certainly cause financial harm to the State and its Counties. Additionally, under Federal Rule of Civil Procedure 19, "the holders of mining claims and mineral leases are necessary parties." *Nat'l Wildlife Fed'n v. Burford*, 676 F. Supp. 271, 275 (D.D.C. 1985), *aff'd*, 835 F.2d 305 (D.C. Cir. 1987).⁴ The holders of the hardrock mining claims are not, and have not been, parties to this litigation. As a result, mining claim holders would also have their rights stripped by a settlement between Plaintiffs and Federal Defendants, all while those same claim holders never have a chance to provide their input in the matter.

Federal Defendants argue that Utah would not suffer any harm from a settlement agreement because the State could object to said settlement and dismissal under Federal Rule of Civil Procedure 41(a)(2).⁵ However, Rule 41(a)(2) is not a sufficient vehicle for the State to protect its rights, which may be terminated in any settlement agreement between the Plaintiffs and Federal Defendants. Rule 41(a)(2) settlement objections are extremely limited in scope and ineffective from the perspective of an intervenor. In fact, the State has attempted this approach

---

³ U.S. Department of the Interior, *Natural Resources Revenue Data, Disbursements*, https://revenuedata.doi.gov/downloads/disbursements/.
⁴ While holders of mining claims and mineral leases are undeniably necessary parties under Rule 19, the Court would have to evaluate several factors to determine whether dismissal of the cases for failure to join a necessary party was proper. *See Burford*, 676 F. Supp. 271 at 275.
⁵ Federal Defendants also indicate that the settlement could result in a dismissal by stipulation under Federal Rule of Civil Procedure 41(a)(1), but it is extremely unlikely that the State and the Joining Parties would sign off an agreement disavowing their rights under a settlement they were excluded from participating in.

when federal government defendants and nonprofit plaintiffs have settled matters while excluding the input of the State, as an intervenor, but it has not been a viable mechanism for the State to protect its rights:

> It is well established that an intervenor "does not have power to block" entry of a settlement or consent decree unless it is unlawful, the product of collusion, or is not in the public interest. *Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO CLC v. City of Cleveland*, 478 U.S. 501, 528-29 (1986). The intervening parties who filed oppositions to the proposed settlement agreement in this case have asserted several objections but have not demonstrated that the proposed settlement is unlawful, a product of collusion, or against the public interest.

*S. Utah Wilderness All. v. U.S. Dept. of the Interior*, 2:12-cv-0257 (D. Utah) (ECF 537, p. 1). As such, Federal Defendants' claim that Rule 41(a)(2) sufficiently protects the State's interests is unfounded. Contrary to the claims of Plaintiffs and Federal Defendants, the State and Counties would suffer clear harm from a settlement agreement that cancels mining leases, especially without the input of the State, the Joining Parties, and claim holders during settlement negotiations.

### b. Federal Defendants and Plaintiffs suffer no harm should the stay be lifted.

Plaintiffs and Federal Defendants argue they will be harmed by lifting the stay in these cases, apparently if even just temporarily. Plaintiffs assert that "there is a risk that Plaintiffs' claims could be time-barred if they later sought to challenge the Trump Proclamation after a decision in the Utah litigation." (ECF 206, pp. 7-8). Federal Defendants assert that "[w]ithout knowing what will become of the Biden Proclamation, the non-moving parties could not effectively meet Utah's mootness arguments and would be prejudiced as a result." (ECF 207, pp. 16-17). These claims are speculative and without merit.

Plaintiffs' argument that their claims could be time-barred is at odds with their own understanding of the law: "Plaintiffs believe D.C. Circuit Court precedent indicates a new

limitations period would begin if final judgment in the Utah litigation 'reinstates' the Trump Proclamation." (ECF 206, p. 8) (internal citation omitted). In addition to contradicting Plaintiffs' previous statement of what the law is, the argument that Plaintiffs suffer harm because they could face a future time-bar is entirely speculative.

The Plaintiffs' argument requires this Court to assume the Tenth Circuit will overturn the Utah District Court. It then requires this Court to attempt to predict the substance of such a potential ruling by the Tenth Circuit and the bases on which the ruling might rely. It further requires this Court to assume that the Tenth Circuit opinion will rule on legal issues not before that court, since Plaintiffs admit the Tenth Circuit faces different legal issues than those before this Court. (ECF 206, p. 6). It requires this Court to speculate as to what, if any, appeals will be taken in the Tenth Circuit. Lastly, it requires this Court to hypothesize how any presidential administration, current or newly elected, will interpret any such decision and apply it on the ground.

Federal Defendants' argument suffers from the same issues. It requires this Court to engage in the same speculation and prediction. Federal Defendants fail to explain why the Tenth Circuit opinion which, Federal Defendants admit, presents "different theories" than the matters before this Court, will ultimately be controlling on this Court.[6] (ECF 207, p. 13). This Court should not accept Plaintiffs' and Federal Defendants' invitation to engage in such vast speculation. Indeed, "Courts should be reluctant to decide cases that require them to speculate on the basis of hypothetical facts." *Cass Cnty. v. United States*, 570 F.2d 737, 741 (8th Cir. 1978). Because any alleged harm to Plaintiffs and Federal Defendants is speculative, the Court

---

[6] The cases before this Court ask whether President Trump could downsize the boundaries of an existing Monument. The Tenth Circuit challenge asks what the proper scope of a Monument is under the Antiquities Act.

should find that no harm will result from the stay being temporarily lifted. This is in stark contrast to the demonstrated obvious harms, discussed above, that the State would suffer should the Federal Defendants and Plaintiffs reach a settlement without its participation.

## II. UTAH'S TENTH CIRCUIT LITIGATION DOES NOT CONFLICT WITH ITS POSITION THAT THE MATTERS BEFORE THIS COURT ARE MOOT, AND THE NONMOVING PARTIES ADMIT THE TENTH CIRCUIT LITIGATION ADDRESSES DIFFERENT LEGAL ISSUES.

As Utah has asserted from the outset, this Court's cases present different legal issues than the Tenth Circuit cases challenging the Biden Proclamation. Plaintiffs assert the "Tenth Circuit's ruling could affect the scope of issues in the cases at bar. Even though Utah is correct that the legal issues in the Tenth Circuit cases are not the same as in the proceedings in this Court." (ECF 206, p. 6). Federal Defendants claim that the State "is taking conflicting positions in two separate cases regarding the Monument." (ECF 207, p.2). Along with being speculative and incorrect, these arguments conflate this Court's matters with the Tenth Circuits matters, and in the process of doing so, oversimplify and misstate the differing issues facing each respective Court.

In the Tenth Circuit, the Utah's appeal raises three discrete questions: (1) Does sovereign immunity bar Utah's suit?; (2) Did President Biden's national monument declarations and reservations exceed the Antiquities Act's scope by his overbroad interpretation of the Act's terms "other objects of historic or scientific interest" and "smallest area compatible"?; and (3) Should President Biden's actions with the Monument be deemed to be final agency actions? Brief for Appellant at 2, *Garfield Cnty., Utah v. Biden*, 23-4106 (10th Cir. 2023). Both Plaintiffs and Federal Defendants agree that the legal issues in the cases before this Court are different than those in the Tenth Circuit. (ECF 206, p. 6); (ECF 207, p. 13).

7

Plaintiffs assert that while the legal issues are different, the "practical effect" could be "significant" with limited explanation as to how that would be, aside from speculation that somehow a Tenth Circuit decision would leave in place the mining claims, which were not raised and did not exist at the filing of these cases. (ECF 206, p. 6). Federal Defendants' assertions that the State is taking conflicting positions not only ignores and dilutes the differing legal questions before the respective courts, but also ignores the reality on the ground facing Utah and its citizens. The Plaintiffs and Federal Defendants want this Court to base its decision on a temporary lift of stay only on speculation, potentialities, and hypothesized future events. The moving parties ask this Court to base its decision on the reality on the ground. The Bureau of Land Management ("BLM") is currently operating within the expanded boundaries pursuant to President Biden's Proclamation. BLM's 2023 Grand Staircase-Escalante National Monument Draft Resource Management Plan has been released and utilized the boundaries put in place by President Biden's Proclamation.[7] The State can challenge President Biden's Proclamation as exceeding the definitions of "objects" and "smallest compatible area" while simultaneously arguing that challenges to President Trump's boundaries – boundaries which have not been observed by the BLM in practice and on the ground for several years – makes the matters pending before this Court moot.

Ultimately, this Court was asked to decide the limited issue of whether President Trump exceeded his authority when he reduced the boundaries of the Monument. It is the central issue in these cases before this Court. Indeed, Federal Defendants devoted the heart of their Memorandum in Support of Cross-Motion for Partial Summary Judgment and Opposition to

---

[7] https://eplanning.blm.gov/public_projects/2020343/200528424/20083506/250089688/Dear%20Reader_%20Abstract_ES_GSENM-DraftRMPEIS.pdf

Plaintiffs' Motions for Partial Summary Judgment (the "Summary Judgment Motion") to defending President Trump's actions by noting, "…Presidents have eliminated lands from monuments designated by prior Presidents [sic] monuments on at least eighteen occasions." (ECF 137, p. 7).  Plaintiffs' claims in the cases before this Court were summarized concisely by Federal Defendants in their Summary Judgment Motion.  *Id.* at 10.  Plaintiffs have not shown that any of the claims asserted by Plaintiffs or defended by the Federal Defendants regarding President Trump's Proclamation will be determined by the Tenth Circuit.  They have offered no reason to conclude that the Tenth Circuit would go beyond  the "simple yet fundamental principle of judicial restraint:  If it is not necessary to decide more to dispose of a case, then it is necessary *not* to decide more." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 348 (2022) (Roberts, J., concurring) (emphasis supplied).

### III.    BOTH THE *NKEN* FACTORS AND THE *ALLEN* FACTORS FAVOR LIFTING THE STAY.

The *Nken* factors and the *Allen* factors regarding the imposition or continuation of a stay have been argued in depth by all parties.  *Nken v. Holder*, 556 U.S. 418, 426 (2009); *Allen v. D.C.*, 2024 WL 379811, (D.D.C. Feb. 1, 2024).  Regardless of whether this Court were to apply either the *Nken* factors or the *Allen* factors, the result is the same and the Court should temporarily lift the stay so the State may file its Motion to Dismiss.

In its Motion to Reopen Cases and Lift Stay in Order to File Motion to Dismiss joined by Intervenor-Defendants American Farm Bureau Federation, Utah Farm Bureau Federation, Garfield County, and Kane County, the State addressed the factors outlined in both tests. All factors in both tests weigh in favor lifting the stay in these cases.  (ECF 202, pp. 4-7).  While the State now agrees that the *Allen* (or *Landis*) test may be more appropriate here, the State notes that "[s]everal district courts have applied the *Nken* test to requests to stay proceedings, even

though *Nken* traditionally applies to staying judgments." *Flores v. Bennett*, 675 F. Supp. 3d 1052, 1057 (E.D. Cal. 2023).  *See also Landis v. N. Am. Co.*, 299 U.S. 248, 249-50 (1936).

Both *Nken* and *Allen* primarily focus on the harms and injuries to the parties involved in the litigation, but *Allen* also requires the Court to consider the additional factor of "whether a stay would promote efficient use of the court's resources." *Allen*, 2024 WL 379811, at *2. The State has already addressed how continuing to impose the stay in these matters would harm the State, and how temporarily lifting the stay would not cause harm or injury to any of the nonmoving parties.

Plaintiffs argue that the continuation of the stay promotes the efficient use of the Court's resources here because it "*may* facilitate settlement and thus eliminate the need for briefing in these cases altogether." (emphasis added) (ECF 206, pg. 9). Initially, should the State and Joining Parties object to a settlement, which is probable, additional briefing would be required despite the proposed settlement. Further, keeping cases that are moot on a Court's docket and requiring the Court's consideration of Joint Status Reports every six months is not an efficient use of the Court's time or resources. The most efficient procedure is to hear and resolve the State's mootness claims and should the Court rule in the moving parties' favor, these matters would be resolved.[8] The nonmoving parties have had over six years to resolve these cases, including almost four years when the Trump Proclamation boundaries were in effect.

Federal Defendants assert that the resolution of the Tenth Circuit litigation "will reduce the uncertainty regarding the validity of the current Monument boundaries." (ECF 207, p. 17). That hoped-for resolution may be years off and requires this Court to speculate that it will

---

[8] The State is ready to file its Motion to Dismiss Due to Mootness and has already provided the Court and other parties with a proposed Motion to Dismiss Due to Mootness.

10

somehow determine the issues of these cases. The State's claim of mootness will ultimately determine if this Court has subject matter jurisdiction under *Article III* of the Constitution to review these claims. Rather than fight the State over whether to temporarily lift the stay in these matters and have the claims of mootness determined, the nonmoving parties should agree that getting to the substance of these issues after years of inactivity will benefit all parties.

## IV. THE COURT SHOULD LIFT THE STAY TO DETERMINE WHETHER IT HAS SUBJECT MATTER JURISDICTION.

Plaintiffs and Federal Defendants both correctly assert that the Court *may*, in its discretion, decline to lift the stay despite the challenge to subject matter jurisdiction – the Court "is not categorically barred from issuing a stay prior to determining its jurisdiction to hear the merits of a case." *Hulley Enterprises Ltd. v. Russian Fed'n*, 211 F. Supp. 3d 269, 280 (D.D.C. 2016). *Hulley* addresses the appropriateness of stays during the pendency of *forum non conveiens* motions. *But* s*ee Cherokee Nation of Oklahoma v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997) (holding "Overarching this balancing [of whether to impose a stay] is the court's paramount obligation to exercise jurisdiction timely in cases properly before it."). However, other cases such as *Bromfman v. United States Citizenship & Immigr. Servs.*, have specifically addressed stays when mootness is being asserted by one of the parties, and the *Bromfman* Court concluded that a stay was not warranted:

> In the instant matter, the Court finds no need, in the interests of "convenience, fairness, and judicial economy" to bypass the question of subject-matter jurisdiction and, indeed, finds that the interest of judicial economy is met by dismissing this action since *no* district court could redress the claim brought by the plaintiff. Furthermore, unlike in *Hulley* and *Novenergia* where the parties were involved in related pending proceedings in another forum rendering an issuance of a stay appropriate, due to the expiration of the Regional Center Program, no pending agency proceeding exists that may have any bearing on the outcome of this case. Additionally, as discussed *infra*, the mootness issue in the instant case does not raise difficult and complex questions that weigh heavily toward resolving the stay issue to bypass a thorny jurisdictional issue in the

11

> interest of judicial economy. In sum, although the Court has discretion to issue a stay before resolving the mootness issue, the circumstances of this case militate in favor of addressing the mootness issue promptly.

No. 21-cv-571, 2021 WL 5014436, at *3 (D.D.C. Oct. 28, 2021) (internal citations omitted) (emphasis supplied).

## **CONCLUSION**

As the State has argued, and the nonmoving parties have admitted, the legal issues in the Tenth Circuit are not the same as those before this Court. The question of mootness in the cases before this Court does not present complex issues, and briefing could start almost immediately. Additionally, as the State has repeatedly indicated, it is seeking a *temporary* (not permanent or indefinite) lifting of the stay in these cases so that the issue of mootness may be resolved, and the cases can either be dismissed or move forward if not moot. (ECF 202). As such, this Court should exercise its discretion and temporarily lift the stay. Accordingly, Intervenor-Defendant State of Utah and the Joining Parties respectfully request the Court to reopen these cases and temporarily lift the stay in the above captioned consolidated cases for the limited purpose of determining mootness.

RESPECTFULLY SUBMITTED this 21st day of June, 2024.

Respectfully submitted,


/s/ Stephen K. Kaiser
STEPHEN K. KAISER (Utah Bar No. 18146)
KATHY A. F. DAVIS (Utah Bar No. 4022)
ASSISTANT ATTORNEYS GENERAL
SEAN D. REYES (Utah Bar No. 7969)
UTAH ATTORNEY GENERAL
1594 W. North Temple Street, Suite 320
Salt Lake City, UT  84116
skkaiser@agutah.gov
kathydavis@agutah.gov

*Attorneys for Intervenor-Defendant State of Utah*


/s/ William G. Myers III (with consent)
William G. Myers III (D.C. Bar No. 408573)
HOLLAND & HART LLP
P.O. Box 2527
Boise, Idaho 83701-2527
wmyers@hollandhart.com
Telephone: (208) 342-5000

*Attorney for Intervenors-Defendants American Farm Bureau Federation and Utah Farm Bureau Federation*

/s/ Ivan L. London (with consent)
Ivan L. London
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, CO 80227
303-292-2021 (phone)
877-349-7074 (fax)
ilondon@mslegal.org

*Attorney for Intervenors-Defendants Kane County, Utah and Garfield County, Utah*

13

## CERTIFICATE OF SERVICE

    I certify that on June 21, 2024, the undersigned electronically filed the foregoing **INTERVENOR-DEFENDANT STATE OF UTAH'S REPLY IN SUPPORT OF ITS MOTION TO REOPEN AND LIFT STAY IN ORDER TO FILE MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to all counsel of record:

                                        /s/ Stephen K. Kaiser
                                        Stephen K. Kaiser
                                        Assistant Attorney General
                                        Attorney for Intervenor-Defendant