**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE WILDERNESS SOCIETY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>Defendants. | Case No. 1:17-cv-02587 (TSC) |
| GRAND STAIRCASE ESCALANTE PARTNERS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>Defendants. | Case No. 1:17-cv-02591 (TSC)<br><br>**CONSOLIDATED CASES** |
| AMERICAN FARM BUREAU FEDERATION, *et al.*,<br><br>Intervenor-Defendants. | |

**TWS PLAINTIFFS' MOTION TO REOPEN CASE AND LIFT STAY**

Plaintiffs The Wilderness Society *et al.* respectfully move the Court to lift the stay in this case and allow them to proceed with their challenge to President Donald J. Trump's 2017 proclamation that unlawfully dismantled the boundaries and protections of Grand Staircase-Escalante National Monument ("Grand Staircase" or "the Monument"). Proclamation No. 9682, 82 Fed. Reg. 58,089 (Dec. 4, 2017) ("2017 Dismantling Proclamation"). Plaintiffs have attached

their Proposed Motion for Leave to File Second Amended and Supplemental Complaint ("Proposed Motion") and Proposed Second Amended and Supplemental Complaint ("Proposed Complaint"), which would streamline the existing claims in this case and add similar legal claims challenging President Trump's second attempt at dismantling the Monument on July 13, 2026. Proclamation No. 11,044, 91 Fed. Reg. 45,179 (July 13, 2026) ("2026 Dismantling Proclamation").

Pursuant to Local Civil Rule 7(m), Plaintiffs' counsel contacted counsel for Federal Defendants and Intervenor-Defendants the morning of August 31, 2026 requesting their position on this motion. At the time of filing, Plaintiffs' counsel has not received a response.

## BACKGROUND

### I. Grand Staircase-Escalante National Monument[1]

Through the Antiquities Act of 1906 ("the Act"), Congress delegated a narrow portion of its powers under the Property Clause of the U.S. Constitution, U.S. Const. art. IV, § 3, cl. 2, to the President to "declare" objects of historic or scientific interest as national monuments and "reserve" land for their protection, Pub. L. No. 59-209, 34 Stat. 225 (codified at 54 U.S.C. § 320301(a)-(b)). National monuments created under the Act reflect the United States' rich and varied history, from the Statue of Liberty in New York to Muir Woods in California; even Grand Canyon National Park was first protected as a national monument designated under the Act.[2] To

[1] The language in this section is the same as in Background Section I of Plaintiffs' Proposed Motion. Plaintiffs include this language here for completeness in the event of separate motion practice over lifting the stay and amending and supplementing.

[2] Proclamation No. 793, 35 Stat. 2174 (Jan. 9, 1908) (Muir Woods); Proclamation No. 794, 35 Stat. 2175 (Jan. 11, 1908) (Grand Canyon); Proclamation No. 1713, 43 Stat. 1968 (Oct. 15, 1924) (Statue of Liberty).

protect objects of historic or scientific interest, presidents' monument proclamations have withdrawn monuments from the operation of hard rock mining and leasing laws that apply by default and have prohibited other activities that threaten the integrity of those objects.[3] The Act contains no language authorizing the President to abolish a national monument in whole or in part.

In 1996, exercising his powers under the Act, President Clinton designated the Grand Staircase-Escalante National Monument in southern Utah. Proclamation No. 6920, 61 Fed. Reg. 50,223 (Sep. 18, 1996) ("1996 Designating Proclamation"). Nicknamed the "science monument," Grand Staircase preserves millennia of the country's history in its towering stepwise cliffs that provide a unique window into the age of dinosaurs. The Monument also holds innumerable cultural and historic properties—some thousands of years old and others from more recent Mormon settlers—as well as flora and fauna found nowhere else. In the years following the 1996 Designating Proclamation, Congress invested tens of millions of dollars to acquire over 170,000 acres of land owned by the State of Utah, bought back pre-existing coal leases, and added other lands to the Monument.[4] Through these investments, Congress demonstrated its general understanding that monument protections were stable and ratified the Grand Staircase's boundaries.

---

[3] *See, e.g.*, 30 U.S.C. § 22 *et seq.* (General Mining Act of 1872); *Cameron v. United States*, 252 U.S. 450, 455-56 (1920) (finding mining claim in Grand Canyon National Monument invalid).

[4] Utah Schools and Lands Exchange Act of 1998, Pub. L. No. 105-335, §§ 2-3, 7, 112 Stat. 3139, 3139-42 (exchanging approximately 176,000 acres of land with Utah and acquiring the mineral interests in an additional 24,000 acres for a $50 million payment); Automobile National Heritage Area Act, Pub. L. No. 105-355, § 201, 112 Stat. 3247, 3252-53 (1998) (adding over 5,000 acres to the Monument); Consolidated Appropriations Act, 2000, Pub. L. No. 106-113, § 601, 113 Stat. 1501, 1501A-215 (1999) (appropriating $19.5 million to buy back coal leases).

On December 4, 2017, President Donald J. Trump upended Congress's careful work by issuing the 2017 Dismantling Proclamation and purporting to constrict the boundaries of the Monument and remove protections from roughly half of the Monument's lands (including lands that Congress added or appropriated funds to enhance). 82 Fed. Reg. at 58,089-91. That same day, multiple plaintiff groups sued, alleging that the 2017 Dismantling Proclamation violated the Antiquities Act, the U.S. Constitution, and the Administrative Procedure Act. *See* Compl., ECF No. 1; Compl., *Grand Staircase-Escalante Partners v. Trump*, No. 1:17-cv-02591 (D.D.C. Dec. 4, 2017), ECF No. 1.

## II. Procedural Background

On February 15, 2018, the Court consolidated, "for administrative purposes," the lawsuits challenging the 2017 Dismantling Proclamation, "with each case retaining its separate character." Order on Mot. to Consolidate 1, ECF No. 25. The Court ordered Plaintiffs to, *inter alia*, "eliminate unnecessary repetition by incorporating one another's filings by reference where possible." *Id.* at 2. Over the next year, the Court also decided several preliminary issues, including denying Federal Defendants' motion to transfer venue and ordering the Federal Defendants to notify Plaintiffs of certain ground-disturbing activity in the Monument's original boundaries.[5] Throughout the litigation, several groups moved to intervene as defendants, and the Court decided those motions as well. *See* Order Granting Mots. to Intervene, ECF No. 83.

During the pendency of Plaintiffs' lawsuit, prospectors located new mining claims and commenced ground-disturbing activities. Plaintiffs amended their complaint detailing these

[5] *See, e.g.*, Order Denying Defs.' Mot. to Transfer, ECF No. 41 (ordering notice requirements and denying transfer); Order Regarding Defs.' Notice Obligations, ECF No. 57 (modifying Defendants' notice obligations following negotiated joint proposal from parties).

harms after this Court denied a motion to dismiss the original complaints. *See* Order Denying Mot. to Dismiss 3, ECF No. 113; TWS Pls.' Am. Compl., ¶¶ 137-44, ECF No. 119; Partners Pls.' Am. Compl., ¶¶ 116-27, ECF No. 120. While cross-motions for summary judgment were pending, President Joseph R. Biden, Jr. took office on January 20, 2021.

The Court stayed this case on March 8, 2021, Order Granting Mot. to Stay, ECF No. 152, and subsequently administratively closed it while President Biden considered restoring the Monument's original boundaries, Min. Order (Sept. 30, 2021). President Biden ultimately issued a proclamation "[r]estor[ing] the Grand Staircase-Escalante National Monument to its size and boundaries as they existed prior to December 4, 2017." Proclamation No. 10,286, 86 Fed. Reg. 57,335, 57,336 (Oct. 8, 2021) ("2021 Restoration Proclamation").

Although the 2021 Restoration Proclamation prospectively prevented new mining claims from harming the Monument, questions remained (and still remain) regarding the legality of mining claims in the wake of the 2017 Dismantling Proclamation. While Plaintiffs and Federal Defendants attempted to settle the challenge to the 2017 Dismantling Proclamation after the 2021 Restoration Proclamation was issued, negotiations became exceedingly difficult once monument opponents (including several Intervenor-Defendants in this case) filed complaints in 2022 challenging Grand Staircase's restoration. *See Garfield County v. Biden*, No. 4:22-cv-00059-DN (D. Utah filed Aug. 24, 2022); *Dalton v. Biden*, No. 4:22-cv-00060-DN (D. Utah filed Aug. 25, 2022). The outcome of those cases (later consolidated) had potential repercussions for this one: for example, if the plaintiffs in the District of Utah litigation were unsuccessful in overturning the 2021 Restoration Proclamation, the dispute in this case would likely be cabined to the aforementioned mining claims. If, however, the Utah plaintiffs succeeded, the 2017 Dismantling Proclamation could have sprung back to life and imperiled nearly a million acres of

land. As a result, both Plaintiffs and Federal Defendants supported maintaining the stay in this case pending a decision from the Tenth Circuit on the Utah plaintiffs' challenge to the 2021 Restoration Proclamation. *See* Pls.' Joint Opp. to Mot. to Reopen, ECF No. 206; Fed. Defs.' Resp. in Opp. to Mot. to Reopen, ECF No. 207. The Court agreed, finding that the Tenth Circuit litigation was "likely to settle or simplify the outstanding issues" in this case. Mem. Op. Denying Mot. to Reopen Case and Lift Stay 4, ECF No. 210 (citing *Hulley Enters. Ltd. v. Russian Fed'n*, 211 F. Supp. 3d 269, 276 (D.D.C. 2016)). The Court ordered the parties to file a joint status report following a decision by the Tenth Circuit. *Id.* at 7.

On June 23, 2026, the Tenth Circuit issued a decision remanding the case to the district court for further proceedings. *Garfield County v. Trump*, 179 F.4th 814, 833 (10th Cir. 2026). Less than a month after the Tenth Circuit's decision, President Trump issued a proclamation dismantling Grand Staircase once again, but with far deeper cuts. 91 Fed. Reg. at 45,179. The 2026 Dismantling Proclamation eliminated over 90% of the Monument, with the near-immediate consequence of opening the excised lands to the location and development of hard rock mining claims. *See id.* at 45,182; *see also Nat'l Wildlife Fed'n v. Burford*, 835 F.2d 305, 324 (D.C. Cir. 1987) ("Under federal mining laws, anyone can enter open public lands, undertake excavation, stake mining claims, and set up mining operations."). Other harms—including leasing for oil, gas, and coal, and increased off-road vehicle use—will be possible on many excised lands. Thus, over 1.6 million acres unlawfully excised from the Monument are once again at risk—the very outcome that Plaintiffs' challenges to the 2017 Dismantling Proclamation sought to avert.

## ARGUMENT

Like staying proceedings, lifting a stay is an exercise of the Court's "inherent" powers "to control the disposition of the causes on its docket with economy of time and effort for itself,

for counsel, and for litigants." *Marsh v. Johnson*, 263 F. Supp. 2d 49, 52 (D.D.C. 2003) (quoting *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998)); Mem. Op. 3-4, ECF No. 210. Once a stay is imposed, the Court may lift it "[w]hen circumstances have changed such that the court's reasons for imposing the stay no longer exist or are inappropriate." *Marsh*, 263 F. Supp. 2d at 52. In determining whether to lift the stay, the Court "must weigh competing interests and maintain an even balance" between judicial economy and any possible hardship to the parties. *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936); *accord Campaign for Accountability v. U.S. Dep't of Just.*, 280 F. Supp. 3d 112, 115 (D.D.C. 2017). Here, the circumstances that caused the Court to stay the case in 2021, and to maintain the stay in 2024, have since changed, and the balance now weighs in favor of lifting the stay and proceeding with the case.

## I. The 2026 Dismantling Proclamation eliminated the reasons for granting and maintaining the stay.

The Court's reasons for imposing the stay no longer exist following the 2026 Dismantling Proclamation. This Court initially stayed the case in 2021 in light of the potential for Grand Staircase to be restored by President Biden. *See* Mem. Op. 2, ECF No. 210. After the Monument's restoration, the Court found the stay was still warranted due to the pending Tenth Circuit litigation—the resolution of which could have cabined this dispute to a discrete number of mining claims located following the 2017 Dismantling Proclamation or re-expanded it to

encompass all lands and subsurface resources opened to harm by the 2017 Dismantling Proclamation. *See* Mem. Op. 5, ECF No. 210.

The 2026 Dismantling Proclamation creates a result similar to the latter outcome by putting the parties in effectively the same position as before the 2021 Restoration Proclamation.[6] Plaintiffs now "know the [new] scope of the dispute" and seek a ruling from this Court on their arguments that the 2017 Dismantling Proclamation is unlawful because the President lacks authority to dismantle national monuments. *See* Pls.' Joint Opp. to Mot. to Reopen 7, ECF No. 206. Plaintiffs also seek to lift the stay so that they may amend and supplement their complaints to add claims challenging the 2026 Dismantling Proclamation on the same legal theories advanced in their complaints challenging the 2017 Dismantling Proclamation.[7] Thus, the 2026 Dismantling Proclamation is a change in circumstances that warrants promptly lifting the stay and allowing Plaintiffs to move forward with their lawsuit.

## II. Due to the changed circumstances, lifting the stay will result in efficiency gains and will not cause any hardship.

The balance of equities tips in favor of lifting the stay because doing so would not cause the Court or other parties any hardship, whereas maintaining the stay would harm Plaintiffs. When balancing the hardships of a stay, this Court looks at (1) the "harm to the moving party if a stay does not issue"; (2) the "harm to the nonmoving party if a stay does issue"; and (3) "whether

---

[6] It is also unclear if the pending Utah litigation will continue in light of the 2026 Dismantling Proclamation, which purports to supersede the 2021 Restoration Proclamation challenged in that case; even if that case is not moot, the claims raised in the Utah litigation are distinct from those that Plaintiffs raise here.

[7] Plaintiffs request resolution of the legality of both the 2026 and 2017 Dismantling Proclamations because, among other things, Plaintiffs prevailing in their challenge to the 2026 Proclamation alone would not necessarily resolve Plaintiffs' challenge to the mining claims located under the 2017 Proclamation.

a stay would promote efficient use of the court's resources." *Allen v. District of Columbia*, No. 20-cv-02453 (TSC), 2024 WL 379811, at *2 (D.D.C. Feb. 1, 2024) (cleaned up).

Reopening this case and lifting the stay will allow Plaintiffs to proceed with their claims challenging the 2017 Dismantling Proclamation. Lifting the stay is also a necessary precursor to Plaintiffs' motion to amend and supplement their complaint so that they can litigate the common legal and factual questions raised by both the 2017 and 2026 Dismantling Proclamations. If the Court lifts the stay, Plaintiffs intend to file the attached Motion for Leave to File a Second Amended and Supplemental Complaint.[8] In contrast, maintaining the stay would deprive Plaintiffs of the opportunity to be fully heard on their motion to supplement and force them to expend resources to file separate challenges to the 2026 Dismantling Proclamation, along with inevitable duplicative procedural motions. These new cases would be related to, and substantially overlap with, this existing case.

While maintaining the stay would harm Plaintiffs, lifting it would not harm other parties. In fact, allowing the Court to consider the 2017 and 2026 Dismantling Proclamations together promotes judicial efficiency, benefiting both the other parties and the Court. A single amended and supplemental complaint (for each set of pre-consolidation plaintiffs) would be more economical than having Plaintiffs file new, separate complaints challenging the 2026 Dismantling Proclamation, for three reasons.

---

[8] As detailed more fully in the Proposed Motion, there is a "liberal standard" standard for amending and supplementing a complaint, and, in most cases, leave to amend should be "freely given." Fed. R. Civ. P. 15(a)(2); *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (discussing standard for amendment under Rule 15(a)); *see also Aftergood v. CIA*, 225 F. Supp. 2d 27, 30 (D.D.C. 2002) (identifying the same liberal standard for supplementation under Rule 15(d)). Supplementation is particularly appropriate where it will "promote the economic and speedy disposition of the entire controversy between the parties." *Powell v. IRS*, 263 F. Supp. 3d 5, 7 (D.D.C. 2017) (quoting *Hall v. CIA*, 437 F.3d 94, 101 (D.C. Cir. 2006)).

First, supplementation would allow Plaintiffs to streamline their existing complaints to excise stale information and synthesize the complete controversy as it now exists into a single pleading.[9] *See* Prop. Mot. to File Second Am. and Suppl. Compl. 8-10.

Second, the factual and legal allegations in the existing complaint are relevant to challenging the 2026 Dismantling Proclamation. *See id.* at 8-9. The developments that occurred following the 2017 Dismantling Proclamation are relevant to establishing harm to Plaintiffs, including their standing to challenge the 2026 Dismantling Proclamation. And Plaintiffs' legal theories challenging both proclamations would be the same.

Third, supplementation would avoid redundant motion practice on preliminary issues that the Court has already decided in the existing case and would be relevant to a challenge to the 2026 Dismantling Proclamation. *See id.* at 10 In addition to resolving consolidation, intervention, and transfer motions, the Court ordered Federal Defendants to give Plaintiffs notice of ground-disturbing activity in areas that lost protection under the 2017 Dismantling Proclamation. Order Regarding Defs.' Notice Obligations, ECF No. 57. These notice provisions are equally important for the additional lands excised by the 2026 Dismantling Proclamation, and Plaintiffs will likely seek a supplemental order addressing notice of ground-disturbing activities in areas that lost protection under the 2026 Dismantling Proclamation.

In sum, the economies that flow from lifting the stay would benefit all parties and yield efficient judicial resolution of these cases. Plaintiffs are unaware of any hardship that will be caused to other parties. The balance of equities thus tips in favor of lifting the stay.

---

[9] For example, claimants abandoned some of the mining claims described in the existing complaints.

**CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request that the Court grant their motion to reopen these cases and lift the stay.

Respectfully submitted September 2, 2026.

*/s/ Thomas Delehanty*
Heidi McIntosh (*pro hac vice*)
Thomas Delehanty (*pro hac vice*)
Earthjustice
633 17th Street, Suite 1600
Denver, CO 80202
Tel.: (303) 623-9466
Fax: (303) 623-8083
E-mail: hmcintosh@earthjustice.org
E-mail: tdelehanty@earthjustice.org

*Counsel for The Wilderness Society, Grand Canyon Trust, National Parks Conservation Association, Great Old Broads for Wilderness, Western Watersheds Project, WildEarth Guardians, Sierra Club, and Center for Biological Diversity*

*/s/ Jacqueline Iwata*
Jacqueline M. Iwata (D.C. Bar No. 1047984)
Natural Resources Defense Council
1152 15th Street NW, Suite 300
Washington, D.C. 20005
Tel.: (202) 289-6868
Fax: (415) 795-4799
E-mail: jiwata@nrdc.org

*Counsel for Natural Resources Defense Council*

*/s/ Stephen Bloch*
Stephen H.M. Bloch (*D.D.C. admission pending*)

Hanna Larsen (*D.D.C. admission pending*)
Southern Utah Wilderness Alliance
425 East 100 South
Salt Lake City, UT 84111
Tel: (801) 486-3161
Fax: (801) 486-4233
E-mail: steve@suwa.org
E-mail: hanna@suwa.org

*Counsel for Southern Utah Wilderness Alliance*