IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE WILDERNESS SOCIETY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>Defendants. | Case No. 1:17-cv-02587 (TSC) |
| GRAND STAIRCASE ESCALANTE PARTNERS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>Defendants. | Case No. 1:17-cv-02591 (TSC)<br><br>**CONSOLIDATED CASES** |
| AMERICAN FARM BUREAU FEDERATION, *et al.*,<br><br>Intervenor-Defendants. | |

**TWS PLAINTIFFS' [PROPOSED] MOTION FOR LEAVE TO FILE SECOND AMENDED AND SUPPLEMENTAL COMPLAINT**

Pursuant to Federal Rules of Civil Procedure 15(a)(2) and 15(d), Plaintiffs The Wilderness Society *et al.* respectfully move for leave to file the attached proposed Second Amended and Supplemental Complaint to add claims challenging President Trump's July 13, 2026 proclamation removing protections from over 90 percent of the Grand Staircase-Escalante National Monument ("Grand Staircase" or "the Monument"). Proclamation No. 11,044, 91 Fed.

Reg. 45,179 (July 13, 2026) (“2026 Dismantling Proclamation”). The proposed complaint also adds one plaintiff, National Parks Conservation Association (“NPCA”), and reflects the withdrawal of plaintiff Defenders of Wildlife. *See* Fed. R. Civ. P. 20 (governing joinder of parties); *id.* 21 (providing that “[o]n motion or on its own, the court may at any time, on just terms, add or drop a party”).

Plaintiffs’ Second Amended and Supplemental Complaint (“Proposed Supplemental Complaint”) promotes judicial economy because the 2026 Dismantling Proclamation raises the same legal issues as the 2017 proclamation challenged in Plaintiffs’ original complaint in this case. Proclamation No. 9682, 82 Fed. Reg. 58,089 (Dec. 4, 2017) (“2017 Dismantling Proclamation”). Both proclamations purport to dismantle Grand Staircase-Escalante National Monument; both proclamations cause Plaintiffs the same types of harm; and both proclamations are unlawful in the same way: the President acted without any grant of statutory or constitutional authority despite purporting to do so under the Antiquities Act of 1906, 54 U.S.C. § 320301 (“the Act”). Because of that shared nucleus of factual and legal issues, which stem from the President’s replication of the same unlawful conduct, resolving Plaintiffs’ challenge to both proclamations through a single complaint will advance judicial economy without prejudicing any party.

Conferring on their Motion to Reopen and Lift the Stay, Plaintiffs’ counsel contacted counsel for Federal Defendants and Intervenor-Defendants on August 31, 2026 and indicated their intent to seek leave to amend and supplement their complaint if the Court granted the Motion to Reopen and Lift the Stay. Plaintiffs did not receive a response to that conferral.

Pursuant to Local Civil Rule 7(i), a copy of the Proposed Supplemental Complaint is attached as Exhibit A to this motion. If the Court grants the motion, Plaintiffs request that the

Court order the parties to confer and, within 30 days of its order, jointly (if possible) submit a proposed schedule for the submission of further pleadings and briefing in the case.

## BACKGROUND

### I. Grand Staircase-Escalante National Monument[1]

Through the Antiquities Act of 1906 ("the Act"), Congress delegated a narrow portion of its powers under the Property Clause of the U.S. Constitution, U.S. Const. art. IV, § 3, cl. 2, to the President to "declare" objects of historic or scientific interest as national monuments and "reserve" land for their protection, Pub. L. No. 59-209, 34 Stat. 225 (codified at 54 U.S.C. § 320301(a)–(b)). National monuments created under the Act reflect the United States' rich and varied history, from the Statue of Liberty in New York to Muir Woods in California; even Grand Canyon National Park was first protected as a national monument designated under the Act.[2] To protect objects of historic or scientific interest, presidents' monument proclamations have withdrawn monuments from the operation of hard rock mining and leasing laws that apply by default and have prohibited other activities that threaten the integrity of those objects.[3] The Act contains no language authorizing the President to abolish a national monument in whole or in part.

[1] The language in this section is the same as in Background Section I of Plaintiffs' Motion to Reopen and Lift Stay. Plaintiffs include this language here for completeness in the event of separate motion practice over amending and supplementing.

[2] Proclamation No. 793, 35 Stat. 2174 (Jan. 9, 1908) (Muir Woods); Proclamation No. 794, 35 Stat. 2175 (Jan. 11, 1908) (Grand Canyon); Proclamation No. 1713, 43 Stat. 1968 (Oct. 15, 1924) (Statue of Liberty).

[3] *See, e.g.*, 30 U.S.C. § 22 *et seq.* (General Mining Act of 1872); *Cameron v. United States*, 252 U.S. 450, 455-56 (1920) (finding mining claim in Grand Canyon National Monument invalid).

In 1996, exercising his powers under the Act, President Clinton designated the Grand Staircase-Escalante National Monument in southern Utah. Proclamation No. 6920, 61 Fed. Reg. 50,223 (Sep. 18, 1996) ("1996 Designating Proclamation"). Nicknamed the "science monument," Grand Staircase preserves millions of years of the region's history in its towering stepwise cliffs that provide a unique window into the age of dinosaurs. The Monument also holds innumerable cultural and historic properties—some thousands of years old and others from more recent Mormon settlers—as well as flora and fauna found nowhere else. In the years following the 1996 Designating Proclamation, Congress invested tens of millions of dollars to acquire over 170,000 acres of land owned by the State of Utah, bought back pre-existing coal leases, and added other lands to the Monument.[4] Through these investments, Congress demonstrated its general understanding that monument protections were stable and ratified the Grand Staircase's boundaries.

On December 4, 2017, President Donald J. Trump upended Congress's careful work by issuing the 2017 Dismantling Proclamation and purporting to constrict the boundaries of the Monument and remove protections from roughly half of the Monument's lands (including lands that Congress added or appropriated funds to enhance). 82 Fed. Reg. at 58,089-91. That same day, multiple plaintiff groups sued, alleging that the 2017 Dismantling Proclamation violated the Antiquities Act, the U.S. Constitution, and the Administrative Procedure Act. *See* Compl., ECF

---

[4] Utah Schools and Lands Exchange Act of 1998, Pub. L. No. 105-335, §§ 2-3, 7, 112 Stat. 3139, 3139-42 (exchanging approximately 176,000 acres of land with Utah and acquiring the mineral interests in an additional 24,000 acres for a $50 million payment); Automobile National Heritage Area Act, Pub. L. No. 105-355, § 201, 112 Stat. 3247, 3252-53 (1998) (adding over 5,000 acres to the Monument); Consolidated Appropriations Act, 2000, Pub. L. No. 106-113, § 601, 113 Stat. 1501, 1501A-215 (1999) (appropriating $19.5 million to buy back coal leases).

No. 1; Compl., *Grand Staircase-Escalante Partners v. Trump*, No. 1:17-cv-02591 (D.D.C. Dec. 4, 2017), ECF No. 1.

## II. Procedural Background

On February 15, 2018, the Court consolidated, "for administrative purposes," the lawsuits challenging the 2017 Dismantling Proclamation, "with each case retaining its separate character." Order on Mot. to Consolidate 1, ECF No. 25. The Court ordered the Plaintiffs to, *inter alia*, "eliminate unnecessary repetition by incorporating one another's filings by reference where possible." *Id.* at 2. Over the next year, the Court also decided several preliminary issues, including denying Federal Defendants' motion to transfer venue and ordering the Federal Defendants to notify Plaintiffs of certain ground-disturbing activity in the Monument's original boundaries.[5] Throughout the litigation, several groups moved to intervene as defendants, and the Court decided those motions as well. *See* Order Granting Mots. to Intervene, ECF No. 83.

Following this Court's denial of a motion to dismiss the original complaints, Order Denying Mot. to Dismiss, ECF No. 113, Plaintiffs filed an amended and supplemental complaint on November 7, 2019, which included additional factual allegations of harm to the Monument that occurred since Plaintiffs' original complaint, such as newly located mining claims. *See* Order 3, ECF No. 113; TWS Pls.' Am. Compl. ¶¶ 136-44, ECF No. 119; Partners Pls.' Am. Compl. ¶¶116-27, ECF No. 120. Based on that operative complaint, the parties then briefed cross-motions for summary judgment.

While those cross-motions were pending, President Biden took office. The Court stayed this case on March 8, 2021, Order Granting Mot. to Stay, ECF No. 152, and subsequently

---

[5] *See, e.g.*, Order Denying Defs.' Mot. to Transfer, ECF No. 41 (ordering notice requirements and denying transfer); Order Regarding Defs.' Notice Obligations, ECF No. 57 (modifying Defendants' notice obligations following negotiated joint proposal from parties).

administratively closed it while President Biden considered restoring the Monument's original boundaries, Min. Order (Sep. 30, 2021). President Biden ultimately issued a proclamation "[r]estor[ing] the Grand Staircase-Escalante National Monument to its size and boundaries as they existed prior to December 4, 2017." Proclamation No. 10,286, 86 Fed. Reg. 57,335, 57,336 (Oct. 8, 2021) ("2021 Restoration Proclamation"). The State of Utah—an intervenor-defendant in this case—and others challenged the 2021 Restoration Proclamation in the District of Utah. *See Garfield Cnty. v. Biden*, No. 4:22-cv-00059-DN (D. Utah filed Aug. 24, 2022); *Dalton v. Biden*, No. 4:22-cv-00060-DN (D. Utah filed Aug. 25, 2022). That litigation generated uncertainty as to the scope of disputed issues in this matter, and the Court kept this case stayed. *See* Order, ECF No. 211.

On July 13, 2026, President Trump issued a proclamation purporting to dismantle Grand Staircase once again, but with far deeper cuts than in 2017. 91 Fed. Reg. at 45,179. The 2026 Dismantling Proclamation eliminated over 90% of the Monument, with the near-immediate consequence of opening the excised lands to the location and development of hard rock mining claims. *See id.* at 45,182; *see also Nat'l Wildlife Fed'n v. Burford*, 835 F.2d 305, 324 (D.C. Cir. 1987) ("Under federal mining laws, anyone can enter open public lands, undertake excavation, stake mining claims, and set up mining operations."). Other harms—including leasing for oil, gas, and coal, and increased off-road vehicle use—will be possible on many excised lands. Thus, over 1.6 million acres unlawfully excised from the Monument are once again at risk—the very outcome that Plaintiffs' challenges to the 2017 Dismantling Proclamation sought to avert.

## ARGUMENT

After the period in which a plaintiff may amend the complaint "as a matter of course," further amendments require "the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)-(2). "The court should freely give leave when justice so requires." *Id.* 15(a)(2).

The court may also "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." *Id.* 15(d). Courts employ the "same standard" for motions to supplement under Rule 15(d) and motions to amend under Rule 15(a)(2).[6] *Xingru Lin v. District of Columbia*, 319 F.R.D. 1, 1 (D.D.C. 2016) (quoting *WildEarth Guardians v. Kempthorne*, 592 F. Supp. 2d 18, 23 (D.D.C. 2008)).

This is a "liberal standard," *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996), and, in most cases, a court should grant leave to supplement, *see Foman v. Davis*, 371 U.S. 178, 182 (1962). In particular, "leave to file a supplemental pleading should be freely permitted when the supplemental facts connect it to the original pleading." *Aftergood v. CIA*, 225 F. Supp. 2d 27, 30 (D.D.C. 2002) (quoting *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995)). "It is the opposing party's burden to demonstrate why leave should not be granted." *Lannan Found. v. Gingold*, 300 F. Supp. 3d 1, 12 (D.D.C. 2017).

Courts consider three factors in evaluating a motion to supplement a complaint. Supplementation should be "freely granted" when doing so will: (1) "promote the economic and speedy disposition of the entire controversy between the parties," (2) "not cause undue delay or trial inconvenience," and (3) "not prejudice the rights of any of the other parties to the action." *Powell v. Internal Revenue Serv.*, 263 F. Supp. 3d 5, 7 (D.D.C. 2017) (quoting *Hall v. CIA*, 437 F.3d 94, 101 (D.C. Cir. 2006)); *see also, e.g.*, *Pub. Emps. for Env't Resp. v. Nat'l Park Serv.*, No. 19-cv-03629, 2021 WL 1198047, at *4 (D.D.C. Mar. 30, 2021).[7]

---

[6] Because an identical standard applies, and for convenience, the remainder of this discussion refers only to supplementation, although Plaintiffs move to both amend and supplement the complaint.

[7] *See also Breen v. Chao*, 2018 WL 1509077, at *9 (D.D.C. Mar. 27, 2018) (applying similar test to motion to join parties).

Here, all three factors support granting Plaintiffs' motion.

## I. Supplementation will promote judicial economy by resolving closely related claims.

Supplementation would promote judicial economy and the efficient resolution of the entire controversy between the parties: the legality of twin proclamations purporting to dismantle the same Monument under substantially the same legal justification. Perhaps "[t]he strongest argument in favor of granting [a] motion [to file a supplemental complaint] is economy—judicial economy as well as the cost of litigation." *Health Ins. Ass'n of Am. v. Goddard Claussen Porter Novelli*, 213 F.R.D. 63, 66 (D.D.C. 2003). Supplementation is therefore favored when "[t]he core facts and allegations remain substantially unchanged" between the original and supplemental complaint. *Compare Flaherty v. Pritzker*, 322 F.R.D. 44, 47 (D.D.C. 2017), *and Pub. Emps. for Env't Resp.*, 2021 WL 1198047, at *6 (granting supplementation to address claims and issues that were "tightly intertwined" with those in the original complaint), *with Thorp v. District of Columbia*, 325 F.R.D. 510, 514 (D.D.C. 2018) (denying motion to supplement where new complaint raised allegations and claims "fully distinct" from the original complaint). In other words, supplementation advances "judicial economy and convenience" when the new complaint "raises similar legal issues to those already before the court, thereby averting a separate, redundant lawsuit." *The Fund for Animals v. Hall*, 246 F.R.D. 53, 55 (D.D.C. 2007) (granting environmental groups' motion to supplement with three new claims and seven new plaintiffs four years after original complaint was filed).

Here, Plaintiffs' challenge to the 2026 Dismantling Proclamation involves the same "core facts and allegations," issues of law, and parties as their challenge to the 2017 Dismantling Proclamation. *Flaherty*, 322 F.R.D. at 47. The challenges to both Dismantling Proclamations involve the same federal lands, are against the same defendants, rely on similar causes of action,

and raise the same constitutional and statutory interpretation questions. While the most recent effort to dismantle the Monument is even more extreme in the measures it takes, the proposed supplemental complaint simply folds in the latest chapters in the Monument's history and legal status, while continuing to raise the same core legal questions—namely, whether the President has authority to dismantle Grand Staircase, despite the Act's omission of that authority and subsequent congressional actions supporting the Monument.[8]

Plaintiffs' Proposed Supplemental Complaint demonstrates the overlap in factual events and their legal relevance. Despite now challenging two unlawful proclamations, Plaintiffs' Proposed Supplemental Complaint synthesizes the complete controversy into a single, streamlined pleading and removes factual allegations overtaken by later events.[9] At the same time, events that occurred under the 2017 Dismantling Proclamation, such as the location of new mining claims, are relevant to establishing Plaintiffs' standing and the imminent harm posed by the 2026 Dismantling Proclamation. Given these similarities, "Plaintiffs' supplemental complaint will allow the Court to focus on the complete set of issues in this controversy that are live and ready for adjudication, allowing for a comprehensive—not piecemeal—resolution." *Pub. Emps. for Env't Resp.*, 2021 WL 1198047, at *7; *see also Flaherty*, 322 F.R.D. at 47; *Fund for Animals*, 246 F.R.D. at 55.

---

[8] These factors also weigh in favor of allowing NPCA to join the case. *Breen*, 2018 WL 1509077, at *9 (adding plaintiffs under Rules 20 and 21 where their claims arose "out of the same transaction, occurrence, or series of transactions or occurrences," and presented common questions of law and fact). NPCA's claims involve the same unlawful actions arising from the same facts that the existing plaintiffs allege and thus would not alter the existing scope of the litigation. Dismissing Defenders of Wildlife likewise would not alter the nature of the case.

[9] For example, claimants abandoned some of the mining claims described in the existing complaint.

Moreover, the Court has already decided several preliminary issues that may need to be relitigated if Plaintiffs file a new complaint. For example, the Court previously ordered the Federal Defendants to give Plaintiffs notice of ground-disturbing activity on lands that the 2017 Dismantling Proclamation excised from the Monument. *See* Order, ECF No. 41; Order, ECF No. 57. These notice provisions are equally important to the several hundred thousand additional acres excised by the 2026 Dismantling Proclamation. A single order controlling notice would benefit judicial economy if Federal Defendants ever failed to comply and Plaintiffs needed to move to enforce the Court's order. Supplementation would also prevent re-litigation of other issues such as consolidation and intervention and thus offers the most judicially efficient path for resolving Plaintiffs' claims. Judicial economy is also served by allowing this Court, which has become familiar with the facts and claims of the existing litigation, to retain the case. *Cf. Pub. Emps. for Env't Resp.*, 2021 WL 1198047, at *6 (noting that under "the D.C. District Court Local Rules," a new complaint "would likely make its way back before this Court" while imposing "unnecessary delay and filing fees to be borne by Plaintiffs (who are largely non-profit organizations)").

## II. Supplementation will not cause delay or inconvenience.

Supplementation is also favored because it will not delay the proceedings. A motion to supplement a complaint should be filed "timely after the new occurrence, event, or transaction" giving rise to the need to supplement, and the filing of the supplemental complaint "should not cause an unreasonable delay." *El-Shifa Pharm. Indus. Co. v. United States*, No. 01-cv-00731, 2005 WL 8160733, at *1 (D.D.C. Sept. 22, 2005). Supplementation is favored when the parties "have not yet briefed the merits and there are no appeals or decisions pending." *Flaherty*, 322 F.R.D. at 47. Similarly, supplementation generally does not cause delay when the proposed changes "do not radically alter" the complaint's core allegations and thus "likely will not require

[the defendants] to expend a substantial amount of time and resources to respond to the amended allegations." *Id.*

This factor favors supplementation as well. Plaintiffs moved to reopen this case, attaching this motion for leave to supplement and a proposed supplemental complaint, within seven weeks of the 2026 Dismantling Proclamation's issuance. And because the Court previously denied without prejudice the parties' cross-motions for summary judgment, Order, ECF No. 152, the parties would need to renew their summary judgment briefs before the original claims in this case could be resolved anyway. Adding Plaintiffs' challenge to the 2026 Dismantling Proclamation—which relies on similar factual and legal bases as their challenge to the 2017 Dismantling Proclamation—will not materially delay the proceedings.

By contrast, the alternative to a supplemental complaint—filing a new, separate challenge to the 2026 Dismantling Proclamation—would increase delay and inconvenience for all parties and the Court. *See Pub. Emps. for Env't Resp.*, 2021 WL 1198047, at *6. This Court would be tasked with resolving Plaintiffs' new, separate action—including likely new motions, *see supra* p. 10, on a parallel track with the existing case. That path risks duplicating both procedural and substantive issues, including many that have already been resolved once, while foregoing the substantive streamlining that the supplemental complaint offers. *See Fund for Animals*, 246 F.R.D. at 55 (giving weight to "the judicial interest in hearing all similarly situated claims together"). A new, separate case also creates the potential for confusion through a cascading series of court rulings. The Court and all parties are better served by consolidating the full

controversy around the President's lack of monument-revocation authority into a single, supplemental complaint.[10]

**III. Supplementation will not prejudice any party's rights.**

Finally, allowing supplementation would not prejudice the other parties in this case. To assess prejudice, courts often evaluate whether defendants would face undue surprise, along with other practical factors like whether "the proposed amendment will alter either the choice of counsel or the nature of the opposing party's strategy." *Dove v. Wash. Metro. Area Transit Auth.*, 221 F.R.D. 246, 248 (D.D.C. 2004). For example, supplementation is appropriate where the defendants would "not be surprised by any substantially new allegations made against them" and where newly added defendants were "intimately involved in the events described in the original [c]omplaint." *Flaherty*, 322 F.R.D. at 47. Conversely, denying a motion to supplement may be appropriate if granting it "would permit [the plaintiff] to transform [its] case into something entirely new." *Cause of Action Inst. v. U.S. Dep't of Just.*, 282 F. Supp. 3d 66, 75 (D.D.C. 2017).

Here, no party will face surprise or be forced to change counsel or legal strategy because Plaintiffs' new claims would continue, not transform, the existing case. Regarding surprise, the Federal Defendants and Intervenor-Defendants have had notice of Plaintiffs' fundamental allegations since this litigation was filed. The same legal issues that were present in 2017 make up the core of the supplemental and amended allegations. Furthermore, the Federal Defendants are the very parties making the challenged decisions around the Monument's boundaries and management, so they are unlikely to be surprised that Plaintiffs wish to supplement their complaint with the Federal Defendants' latest actions.

---

[10] Similarly, adding NPCA to this case, instead of requiring them to file a separate case, promotes efficiency and would not cause delay or inefficiency.

The Intervenor-Defendants are also surely aware of the latest changes in the Monument's status, given that the proclamations were public and the Intervenor-Defendants claim to have "significant, protectable interests" in the Monument and its management.[11] In other words, supplementation is sought based on actions well known to the non-moving parties. Thus, neither the Federal Defendants nor Intervenor-Defendants will be surprised by the allegations or legal claims set out in Plaintiffs' proposed supplemental complaint.

Similarly, it is difficult to imagine how Plaintiffs' new allegations and claims would affect the other parties' choice of counsel or litigation strategy, as the new claims are simply the continuation of a long-running dispute. And, because Plaintiffs' new allegations and claims simply fold in the latest chapters in the ongoing contest over the Monument's fate, they will not "transform" the current case into something new. *Cause of Action Inst.*, 282 F. Supp. 3d at 75. The basic contentions regarding the scope of presidential authority have been pending since the inception of this matter.

Indeed, prejudice to the other parties may result if Plaintiffs' motion is *denied*. In that event, Plaintiffs would be forced to initiate a separate lawsuit challenging the 2026 Dismantling Proclamation, requiring the Intervenor-Defendants to move to intervene anew (should they so choose), and requiring the Court to resolve those and other duplicative motions.

Thus, all three factors—increased efficiency, lack of delay, and lack of prejudice—weigh in favor of granting Plaintiffs leave to supplement their complaint.

---

[11] *See* Am. Farm Bureau Fed'n and Utah Farm Bureau Fed'n Mem. in Supp. of Mot. to Interv. 11, ECF No. 28-3; *see also* Kane Cnty. and Garfield Cnty. Mem. in Supp. of Mot. to Interv. 16, ECF No. 33-3 (claiming "legally protected interest" in this case); State of Utah Mot. to Interv. and Mem. in Supp. 4, ECF No. 46 (claiming "strong interest" in this case).

## CONCLUSION

Given the similarities in facts and core legal contentions between the original and supplemental complaint, the procedural posture of this case, and the parties involved, Plaintiffs' challenges to the 2026 and 2017 Dismantling Proclamations are most effectively resolved as a single case. The Court should grant Plaintiffs' motion for leave to supplement the complaint along with Plaintiffs' request that the Court order the parties to confer and jointly (if possible) submit a schedule, within 30 days of its order, for the submission of further pleadings and briefing in the case.

Respectfully submitted September 2, 2026.

*<u>/s/ Thomas Delehanty</u>*
Heidi McIntosh (*pro hac vice*)
Thomas Delehanty (*pro hac vice*)
Earthjustice
633 17th Street, Suite 1600
Denver, CO 80202
Tel.: (303) 623-9466
Fax: (303) 623-8083
E-mail: hmcintosh@earthjustice.org
E-mail: tdelehanty@earthjustice.org

*Counsel for The Wilderness Society, Grand Canyon Trust, National Parks Conservation Association, Great Old Broads for Wilderness, Western Watersheds Project, WildEarth Guardians, Sierra Club, and Center for Biological Diversity*

*<u>/s/ Jacqueline Iwata</u>*
Jacqueline M. Iwata (D.C. Bar No. 1047984)
Natural Resources Defense Council
1152 15th Street NW, Suite 300
Washington, D.C. 20005
Tel.: (202) 289-6868
Fax: (415) 795-4799

E-mail: jiwata@nrdc.org

*Counsel for Natural Resources Defense Council*

*/s/ Stephen Bloch*
Stephen H.M. Bloch (*D.D.C. admission pending*)
Hanna Larsen (*D.D.C. admission pending*)
Southern Utah Wilderness Alliance
425 East 100 South
Salt Lake City, UT 84111
Tel: (801) 486-3161
Fax: (801) 486-4233
E-mail: steve@suwa.org
E-mail: hanna@suwa.org

*Counsel for Southern Utah Wilderness Alliance*